Jere Austill, of Mobile, Ala., for complainant.

Alex. C. Birch, U. S. Dist. Atty., of Mobile, Ala., for respondents.

ERVIN, District Judge.

This is a bill filed by Cleveland to enjoin the collection of an alleged tax of $1,000 under section 206, title 26 USCA, claimed by Davis of Cleveland because Cleveland is doing business as a retail liquor dealer in the state of Alabama, and under the laws of the state of Alabama the sale of liquor is prohibited in said state.

The bill alleges that Cleveland has already paid to said Harwell G. Davis, as collector of internal revenue, $25 for a retail liquor dealer's license for the state of Alabama for the period beginning July 27, 1934, and ending June 30, 1935, said business to be conducted at 64 St. Francis street, Mobile, Ala., under section 205, title 26 USCA; that the collector and his deputies had declared that they are preparing to demand payment of said alleged excise tax of $1,000; although they have already issued a license to do business as a retail liquor deal-

**CLEVELAND v. DAVIS, Collector of Internal Revenue, et al.**

**No. 191.**

District Court, S. D. Alabama.

Dec. 17, 1934.

er to complainant; that there has been so far no distraint warrants served on complainant, but he is informed and believes, and so states, that the said collectors will proceed to levy such distraints upon his property if he fails to pay such alleged tax, and, if so levied, his business will be destroyed, and that he is wholly without adequate remedy at law to prevent such seizure of his property. The bill then charges that the said so-called special excise tax of $1,000 is not a tax, but is a penalty, and that, should the distress warrant be served on him, it will deprive him of due process of law under the Federal Constitution, in that complainant would be punished for an alleged criminal offense without hearing, information, indictment, or trial by jury. The prayer for relief is that the said collector and his deputies be enjoined from proceeding to collect, or attempt to collect, said sum of $1,000 by warrant, assessment, sale, or otherwise.

Respondents appeared and moved to dismiss the bill for want of equity on various grounds. The motion raises two primary questions: First, whether the bill is prematurely filed; and, second, whether the so-called tax is in fact a tax or a penalty.

Complainant recognizes that, if the assessment is a tax, the bill cannot be maintained because of section 154, title 26 USCA, which forbids the injunction of the collection of any tax. However, it has been held that, if the assessment is really a penalty, this statute does not apply. Lipke v. Lederer, 259 U. S. 559, 42 S. Ct. 549, 66 L. Ed. 1061.

Considering, first, the question of whether the bill is premature: In the case of Pennsylvania v. West Virginia, 262 U. S. 592, 43 S. Ct. 658, 663, 67 L. Ed. 1117, 32 A. L. R. 300, the court was considering this question, and it appeared that West Virginia had passed an act regulating the taking and disposition of natural gas in the state. The court says: "The second question is whether the suits were brought prematurely. They were brought a few days after the West Virginia act went into force. No order under it had been made by the Public Service Commission; nor had it been tested in actual practice. But this does not prove that the suits were premature. Of course they were not so, if it otherwise appeared that the act certainly would operate as the complainant states he apprehended it would. One does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough."

This seems to lay down the rule very clearly, and, testing the facts set up in this bill by that rule, we find that there is a federal statute which imposes the sum which it denominates an excise tax of $1,000 on persons who propose to deal in intoxicating liquors in a state whose laws forbid the sale of such liquors. The statute further authorizes the collector of internal revenue to levy distress warrants where those taxes are not paid.

The complainant alleges that he is doing a retail business in the state of Alabama, and that under its laws the sale of liquors is prohibited; that there has been published a statement by the collector that he intends to proceed to collect this $1,000 as a tax.

It thus seems to me very clear that the injury to complainant is certainly impending, and I think the bill is not premature.

This brings us to the question of whether or not the sum claimed by the collector is a tax or is really a penalty. It is hard at times to differentiate between the question of whether the sum claimed is a tax or a penalty. In Lipke v. Lederer, 259 U. S. 561, 42 S. Ct. 549, 551, 66 L. Ed. 1061, the court says:

"The mere use of the word 'tax' in an act primarily designed to define and suppress crime is not enough to show that within the true intendment of the term a tax was laid. Child Labor Tax Case, 259 U. S. 20, 42 S. Ct. 449, 66 L. Ed. 817 [21 A. L. R. 1432]. When by its very nature the imposition is a penalty, it must be so regarded. Helwig v. U. S., 188 U. S. 605, 613, 23 S. Ct. 427, 47 L. Ed. 614. Evidence of crime (section 29 [title 2, 27 USCA § 46]) is essential to assessment under section 35 [title 2, 27 USCA § 52]. It lacks all the ordinary characteristics of a tax, whose primary function 'is to provide for the support of the government' and clearly involves the idea of punishment for infraction of the law—the definite function of a penalty. O'Sullivan v. Felix, 233 U. S. 318, 324, 34 S. Ct. 596, 58 L. Ed. 980.

"The collector demanded payment of a penalty, and section 3224 [26 USCA § 154], which prohibits suits to restrain assessment or collection of any tax, is without application. And the same is true as to statutes granting the right to sue for taxes paid under protest. A revenue officer without notice has undertaken to assess a penalty for

an alleged criminal act and threatens to enforce payment by seizure and sale of property without opportunity for a hearing of any kind.

"Section 35 prescribes no definite mode for enforcing the imposition which it directs, and, if it be interpreted as above stated, we do not understand counsel for the United States claim that relief should be denied to the appellant. Before collection of taxes levied by statutes enacted in plain pursuance of the taxing power can be enforced, the taxpayer must be given fair opportunity for hearing; this is essential to due process of law. Central of Georgia Ry. Co. v. Wright, 207 U. S. 127, 136, 138, 142, 28 S. Ct. 47, 52 L. Ed. 134, 12 Ann. Cas. 463. And certainly we cannot conclude, in the absence of language admitting of no other construction, that Congress intended that penalties for crime should be enforced through the secret findings and summary action of executive officers. The guaranties of due process of law and trial by jury are not to be forgotten or disregarded. See Fontenot v. Accardo (C. C. A.) 278 F. 871. A preliminary injunction should have been granted."

In Helwig v. U. S., 188 U. S. 613, 23 S. Ct. 427, 430, 47 L. Ed. 614, which was quoted by the court in Lipke v. Lederer, it is said: "Although the sum imposed by reason of undervaluation may be simply described as 'a further sum' or 'an additional duty,' if it is yet so enormously in excess of the greatest amount of regular duty ever imposed upon an article of the same nature, and it is imposed by reason of the action of the importer, such facts clearly show it is a penalty in its intrinsic nature, and the failure of the statute to designate it as a penalty, but describing it as 'a further sum,' or 'an additional duty,' will not work a statutory alteration of the nature of the imposition, and it will be regarded as a penalty when by its very nature it is a penalty."

Here it is the action of the liquor dealer in doing business in a prohibited territory which is penalized, and the sum of the penalty is forty times the amount of the tax for engaging in the business.

It thus appears that, if the imposition was intended as a punishment for an offense committed, it is a penalty. It seems to me then that, if the imposition was not to punish for an offense already committed, but to prevent an offense contemplated, it would be equally a penalty. That the assessment was levied, not for the purpose of producing revenue, but for the purpose of preventing people from taking out a license to do liquor business in a dry territory, in other words, to prevent people from taking out a license in violation of the laws of the state would make the act a penalty, for it makes no difference whether the violation would be under the federal or state law.

In this connection let us see what is said in the Child Labor Case, 259 U. S. 20, 42 S. Ct. 449, 66 L. Ed. 817, 21 A. L. R. 1432. Beginning on page 36 of 259 U. S., 42 S. Ct. 449, 450: "We must construe the law and interpret the intent and meaning of Congress from the language of the act. The words are to be given their ordinary meaning unless the context shows that they are differently used. Does this law impose a tax with only that incidental restraint and regulation which a tax must inevitably involve? Or does it regulate by the use of the so-called tax as a penalty? If a tax, it is clearly an excise. If it were an excise on a commodity or other thing of value, we might not be permitted under previous decisions of this court to infer solely from its heavy burden that the act intends a prohibition instead of a tax. But this act is more. It provides a heavy exaction for a departure from a detailed and specified course of conduct in business. That course of business is that employers shall employ in mines and quarries, children of an age greater than 16 years; in mills and factories, children of an age greater than 14 years, and shall prevent children of less than 16 years in mills and factories from working more than 8 hours a day or 6 days in the week. If an employer departs from this prescribed course of business, he is to pay to the government one-tenth of his entire net income in the business for a full year. The amount is not to be proportioned in any degree to the extent or frequency of the departures, but is to be paid by the employer in full measure whether he employs 500 children for a year, or employs only one for a day."

Again on page 37 of 259 U. S., 42 S. Ct. 449, 450: "In the light of these features of the act, a court must be blind not to see that the so-called tax is imposed to stop the employment of children within the age limits prescribed. Its prohibitory and regulatory effect and purpose are palpable."

Again on page 39 of 259 U. S., 42 S. Ct. 449, 451: "So here the so-called tax is

a penalty to coerce people of a state to act as Congress wishes them to act in respect of a matter completely the business of the state government under the federal Constitution."

The federal government has no more right, in the absence of a constitutional grant, to regulate or prohibit dealing in liquors than it has to regulate the employment of children.

What is said, therefore, in this case is peculiarly applicable to the instant case.

In the Child Labor Case the court found that the act invaded a state province, viz., regulating employment of children, and the tax was an incident to this regulation. Here certain states and districts have prohibition laws, and the statute was passed solely in an effort to compel people to conform to such laws. Here certainly the government has no right to penalize a man for violating the state laws.

The last quotation from the Child Labor Case is therefore peculiarly apt, for its purpose is manifestly to coerce the people to conform to the state laws prohibiting dealing in liquor.

We see here that the government has already imposed the tax of $25 for the privilege of doing business as a liquor dealer, which tax had been paid by this complainant. This tax operates uniformly over the whole country. It certainly must be assumed, therefore, that the Congress felt that $25 was a reasonable sum to be paid for doing this class of business. But, when this sum of $1,000 was imposed nominally for doing business as a liquor dealer in states whose laws prohibit such business, it was really to prevent people from taking out a license contrary to the state laws in such territory. What relation does the $1,000 for the privilege of selling liquor in a dry state bear to the $25 for selling liquor everywhere? As a matter of fact, whether a penalty or a tax, the amount of $1,000 when collected goes into the Treasury of the United States. But certainly Congress did not contemplate that the right to do business in a state whose laws prohibit the sale of liquors was $1,000, while they had already sold the license to do business in the same place and issued a permit to do it for $25. It was undoubtedly an act imposing a penalty on any one who meant to violate the laws of the state.

Again section 205, title 26, of the USCA, provides for a retail liquor dealer's tax of $25, and for a wholesale liquor dealer, $100,

and for a retail dealer in malt liquor, $20, and wholesale in malt liquor, $50, and yet section 206 of the same title puts the price of $1,000 on "every person carrying on the business of a brewer, distiller, wholesale liquor dealer, retail liquor dealer, wholesale dealer in malt liquor, retail dealer in malt liquor, or manufacturer of stills, as defined in sections 202 to 205, inclusive, and section 241 of this title, in any State, Territory, or District of the United States contrary to the laws of such State, Territory, or District, or in any place therein in which carrying on such business is prohibited by local or municipal law."

Suppose there is only a small municipality that prohibits the sale of liquor, the $1,000 amount would apply the same as if it were for a whole state as to a brewer, a wholesaler, and a retailer.

If the right to carry on either one of these businesses ordinarily is put in the statute at a different price, but all of it is grouped under one lump sum of $1,000 in this section, does not that indicate again that the $1,000 has no relation to the various sums fixed in the previous sections but is intended as a penalty?

Again on page 38 of 259 U. S., 42 S. Ct. 449, 451 of the Child Labor Case, supra, the court says: "The difference between a tax and a penalty is sometimes difficult to define, and yet the consequences of the distinction in the required method of their collection often are important. Where the sovereign enacting the law has power to impose both tax and penalty, the difference between revenue production and mere regulation may be immaterial, but not so when one sovereign can impose a tax only, and the power of regulation rests in another."

Here we see that the Congress would have no power to punish one for violating the state law but they grant a license to sell liquor in that state, but, after issuing the license to sell liquor, they say, if there is a prohibition law enforcement in that state or territory, you must pay an additional $1,000 for such right or suffer the severe punishment provided in the act, including the power of distraint by the collector. 26 USCA § 116. Did Congress intend this as a tax or a penalty for doing business in a state whose laws prohibit the doing of that business there? Congress would have no right to impose two taxes or a double tax on the same business done at the same place. It has already imposed the tax of $25 and collected it. Then anoth-

er imposition is made of $1,000. What was that for? A revenue tax to the government or to prevent people who wanted to sell liquor from getting a license in a dry territory? It could not be a revenue tax, for Congress had already assessed and collected the $25 for doing business, which is the value Congress put upon the right to do business. Why, then, levy another one of $1,000 in certain districts except as a penalty?

My conclusion is that, notwithstanding the act denominated it as an excise tax, the sum of $1,000 is a penalty.

Equity may enjoin an official from a resort to criminal proceedings to enforce an illegal demand. Philadelphia Co. v. Stimson, 223 U. S. 621, 32 S. Ct. 340, 56 L. Ed. 570.

It is further urged that the bill should be dismissed because complainant does not come in equity with clean hands, in that the bill shows he is doing business in the state of Alabama contrary to its laws. I do not think the government is in a position to raise this question in this case, for by its statute and regulations it has put the complainant in a position where he is absolutely remediless, unless this court can relieve him.

An order will be entered overruling the motion to dismiss the bill.