## UNITED STATES *v.* CONSTANTINE.

No. 40. Argued November 14, 1935.—Decided December 9, 1935.

---

[12] Thayer, *ubi supra,* p. 346.

[13] *Crowell* v. *Benson, supra,* 46; *Voehl* v. *Indemnity Insurance Co.,* 288 U. S. 162, 166.

288

*Mr. Gordon Dean* argued the cause, and *Solicitor General Reed, Assistant Attorney General Keenan,* and *Messrs. James E. Ruffin, Mahlon D. Kiefer,* and *W. Marvin Smith* filed a brief, for the United States.

*Mr. William S. Pritchard,* with whom *Messrs. Richard T. Rives* and *George D. Toole* were on the brief, for respondent.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

In November, 1934, an information was filed in the District Court for Northern Alabama charging that on October 8, 1934, at Birmingham, Alabama, the respondent conducted the business of a retail dealer in malt liquor, contrary to the laws of the State, without having paid the special excise tax of $1,000 imposed by § 701 of the

Revenue Act of 1926.[1]   A demurrer and a motion to quash were overruled, a plea of not guilty was entered, and a jury trial was waived.   Pursuant to a stipulation of facts, the court found that for the fiscal year July 1, 1934, to June 30, 1935, the respondent registered with the Collector of Internal Revenue as a retail liquor dealer and paid the tax of $25.00 imposed upon such dealers by R. S. 3244, as amended;[2] on the date named in the information the respondent had a restaurant in Birmingham, where he conducted the business of a retail dealer in malt liquors containing more than one-half of one per cent. alcohol, which business was contrary to the laws of

---

[1] "On an after July 1, 1926, there shall be levied, collected, and paid annually, in lieu of the tax imposed by section 701 of the Revenue Act of 1924, a special excise tax of $1,000, in the case of every person carrying on the business of a brewer, distiller, wholesale liquor dealer, retail liquor dealer, wholesale dealer in malt liquor, retail dealer in malt liquor, or manufacturer of stills, as defined in section 3244 as amended and section 3247 of the Revised Statutes, in any State, Territory, or District of the United States contrary to the laws of such State, Territory, or District, or in any place therein in which carrying on such business is prohibited by local or municipal law.   The payment of the tax imposed by this section shall not be held to exempt any person from any penalty or punishment provided for by the laws of any State, Territory, or District for carrying on such business in such State, Territory, or District, or in any manner to authorize the commencement or continuance of such business contrary to the laws of such State, Territory, or District, or in places prohibited by local or municipal law.

"Any person who carries on any business or occupation for which a special tax is imposed by this section, without having paid such special tax, shall, besides being liable for the payment of such special tax, be subject to a penalty of not more than $1,000 or to imprisonment for not more than one year, or both."   Revenue Act of 1926, c. 27, 44 Stat. 9, 95.

[2] U. S. C. Tit. 26, § 1394.   The act imposes special taxes as follows: Brewers $100; manufacturers of stills $50, and $20 for each still or worm; retail dealers in liquors, $25; wholesale liquor-dealers $100; retail dealers in malt liquors $20; wholesale dealers in malt liquors $50.

the state and of the city; and had not paid the $1,000 tax. Respondent's motion for judgment was denied, that of the United States was granted, and the respondent was sentenced. The Circuit Court of Appeals reversed the judgment [3] on the ground that the section became inoperative upon the repeal of the Eighteenth Amendment.

In its petition for certiorari the United States, though admitting the absence of a conflicting decision by the Circuit Court of Appeals of any other circuit, called attention to diverse decisions in the district courts,[4] to the many other cases pending in which action is awaiting authoritative settlement of the question presented herein, to the large amount of money involved, and to the number of persons whose liability will remain uncertain until the dispute is finally settled. The question thus assumes the importance required by Rule 38 and the writ issued accordingly.

In concluding that the law imposed a penalty in aid of the enforcement of the Eighteenth Amendment, and therefore fell with its repeal, the court relied upon the legislative history and administrative interpretation of § 701, and also thought such a construction necessary to avoid a serious question under Article I, § 8 of the Constitution as to the uniformity of operation of the Act throughout the United States. The Government insists that the section was not a part of the machinery for enforcing the prohibition amendment, but a revenue measure levying an excise conformably to the Constitution.

---

[3] 75 F. (2d) 928.

[4] *Cleveland* v. *Davis,* 9 F. Supp. 337; *Green* v. *Page,* 9 F. Supp. 844; *Brabham* v. *Cooper,* 9 F. Supp. 904; *Liberis* v. *Nee,* 10 F. Supp. 366; *Senate Club* v. *Viley,* 12 F. Supp. 982; *United States* v. *Arthover* (D. C. N. D. Tex., unreported); *United States* v. *Columbia Fruit Products Co.,* 10 F. Supp. 873.

*First*: The Government attacks, and the respondent supports, the conclusion of the court below that the section was adopted pursuant to the Eighteenth Amendment. We think little aid is to be had from the legislative history. On the one hand it is said that the substance of the section was originally embodied in the Revenue Act of 1918, which became a law February 28, 1919; that while under consideration by Congress in the autumn of 1918 the bill contained the section in question; and that, when enacted, it was made effective as of January 1, 1919. As the Eighteenth Amendment was not proclaimed until January 9, 1919, effective January 9, 1920, the argument is that the Act of 1918 was independent revenue legislation and no section of it could have been intended to enforce fundamental law which was to become operative long after the passage of the act. From the fact that the provision for the additional tax of $1,000 was carried forward from the Act of 1918 through those of 1921 and 1924 into that of 1926,[5] the conclusion is drawn that the tax remained, as it was in the beginning, a means of raising revenue, and that its purpose was not altered by the existence of national prohibition when it was readopted as § 701 of the Revenue Act of 1926. Reference is also made to the fact that the section was specifically repealed by the Revenue Act of 1935,[6] and the deduction is drawn that Congress thought it had no relation to the prohibition amendment.

On the other hand, the respondent urges that the proclamation of the Amendment prior to the passage of the Act of 1918 made prohibition a certainty; that the tax of $1,000 laid upon violators of state liquor laws, in addition

[5] R. A. 1918, c. 18, §§ 1001 (12), 1005, 40 Stat. 1057, 1128, 1129; R. A. 1921, c. 136, §§ 1001, 1004, 42 Stat. 227, 296, 298; R. A. 1924, c. 234, §§ 701, 704, 43 Stat. 253, 327, 328.

[6] Act of August 30, 1935, c. 829, 49 Stat. 1014.

to the graded excises on various forms of the liquor business prescribed by R. S. 3244, and the retention of the $1,000 tax in the 1926 act, which discarded the many existing excises on other businesses, evince a purpose to prohibit rather than to tax liquor traffic violative of state laws.

For reasons presently to be stated we find it unnecessary to decide whether the policy exhibited by the act at its inception was independent of the Eighteenth Amendment or in subvention of it.

*Second*: The court below and the respondent regard the administrative construction as persuasive that the section is penal in character. After the adoption of the Revenue Act of 1926, the Treasury ruled that the so-called tax of $1,000 was a penalty.[7] Upon repeal of the Eighteenth Amendment the position was reversed; collectors were instructed to treat the item as a special tax; and the Department proceeded to prepare and distribute appropriate revenue stamps to be issued in token of its payment. We think the administrative practice has little bearing

[7] T. D. 3911 (July 30, 1926). "Subject of internal revenue and prohibition taxes are (*sic*) divided into two classes:

1. Internal revenue taxes proper—that is taxes generally recognized as such.

2. Those while in the nature of internal revenue taxes are necessarily held to be penalties, ' and must be collected through the United States Courts.'

The following list is classed as taxes:

| | |
|---|---|
| Retail dealers in malt liquors | $20.00 |
| Wholesale dealers in malt liquors | 50.00 |

The following list is classed as penalties:

' Under section 701 of the Revenue Act of 1926. A special tax of $1,000 on any person carrying on retail business of dealer in malt liquors contrary to laws of state or territory.'

. . . . .

' Those designated as penalties. Such taxes will be carefully scheduled, summarized, and reported to the United States Attorney for any action he may bring.' "

upon the question of the nature of the exaction. During the life of the Amendment collection was lawful whether the demand was for a tax or a penalty; and the classification by the administrative officers was therefore immaterial. Congress then had power, in the enforcement of prohibition, to impose penalties for violations of national prohibitory laws.[8]

*Third*: The repeal of the Eighteenth Amendment renders it necessary to determine whether the exaction is in fact a tax or a penalty. If it was laid to raise revenue its validity is beyond question, notwithstanding the fact that the conduct of the business taxed was in violation of law. The United States has the power to levy excises upon occupations,[9] and to classify them for this purpose; and need look only to the fact of the exercise of the occupation or calling taxed, regardless of whether such exercise is permitted or prohibited by the laws of the United States[10] or by those of a State.[11] The burden of the tax may be imposed alike on the just and the unjust. It would be strange if one carrying on a business the subject of an excise should be able to excuse himself from payment by the plea that in carrying on the business he was violating the law. The rule has always been otherwise. The tax imposed by R. S. 3244[12] affords an apposite illustration. That act imposes an excise, varying in amount, upon different forms of the liquor traffic. The respondent

---

[8] Section 2 of the Eighteenth Amendment directed that the Congress and the several States should have concurrent power of enforcement by appropriate legislation. Compare *National Prohibition Cases*, 253 U. S. 350; *United States* v. *Lanza*, 260 U. S. 377; *Hebert* v. *Louisiana*, 272 U. S. 312.

[9] *License Tax Cases*, 5 Wall. 462.

[10] *United States* v. *Yuginovich*, 256 U. S. 450, 462; *United States* v. *Stafoff*, 260 U. S. 477, 480; *United States* v. *One Ford Coupe*, 272 U. S. 321, 327, 328.

[11] *License Tax Cases, supra.*

[12] *Supra*, Note 2.

paid the annual tax of $25 thereby required, despite the fact that he was violating local law in prosecuting his business. Undoubtedly this was a true tax for which he was liable. The question is whether the exaction of $1,000 in addition, by reason solely of his violation of state law, is a tax or a penalty? If, as the court below thought, § 701 was part of the enforcing machinery under the Amendment, it automatically fell at the moment of repeal.[13]

But even though the statute was not adopted to penalize violations of the Amendment, it ceased to be enforceable at the date of repeal, if, in fact, its purpose is to punish rather than to tax. The only color for the assertion of congressional power to ordain a penalty for violation of state liquor laws is the Eighteenth Amendment, which gave to the federal government power to enforce nation-wide prohibition.[14] That has been recalled; and the case must be decided in the light of constitutional principles which would have been applicable had the Amendment never been adopted. In the acts which have carried the provision, the item is variously denominated an occupation tax, an excise tax, and a special tax. If in reality a penalty it cannot be converted into a tax by so naming it,[15] and we must ascribe to it the character disclosed by its purpose and operation, regardless of name.[16] Disregarding the designation of the exaction, and viewing its substance and application, we hold that it is a penalty for the violation of state law, and as such beyond the limits of federal power.

---

[13] *United States* v. *Chambers*, 291 U. S. 217.

[14] See Note 8, *supra.*

[15] *United States* v. *LaFranca*, 282 U. S. 568, 572.

[16] *Macallen Co.* v. *Massachusetts*, 279 U. S. 620, 625; *United States* v. *One Ford Coupe, supra,* 328; *Educational Films Corp.* v. *Ward*, 282 U. S. 379, 387.

Since 1878, the revised statutes have classified various forms of the liquor traffic for the payment of excises differing in amount according to the nature of the business.[17] When the section exacting $1,000 additional from all persons engaged in the traffic in violation of state law was made a part of the revenue laws the amount of the tax due by the respondent under R. S. 3244 was $25.00. The so-called excise of $1,000 is forty times as great. It is ten times as great as the annual tax under R. S. 3244 for wholesale liquor dealers and brewers, and fifty times as great as that imposed upon dealers in malt liquors. If the imposts under R. S. 3244 were fixed in amount in accordance with the importance of the business or supposed ability to pay, the exaction in question is highly exorbitant. This fact points in the direction of a penalty rather than a tax.

The condition of the imposition is the commission of a crime. This, together with the amount of the tax, is again significant of penal and prohibitory intent rather than the gathering of revenue.[18] Where, in addition to the normal and ordinary tax fixed by law, an additional sum is to be collected by reason of conduct of the taxpayer violative of the law, and this additional sum is grossly disproportionate to the amount of the normal tax, the conclusion must be that the purpose is to impose a penalty as a deterrent and punishment of unlawful conduct.[19]

We conclude that the indicia which the section exhibits of an intent to prohibit and to punish violations of state law as such are too strong to be disregarded, remove all semblance of a revenue act, and stamp the sum it exacts as a penalty. In this view the statute is a clear invasion of the police power, inherent in the States, reserved from

[17] See Note 2, *supra*.

[18] Compare *Lipke* v. *Lederer*, 259 U. S. 557, 562.

[19] *Helwig* v. *United States*, 188 U. S. 605, 613.

the grant of powers to the federal government by the Constitution.

We think the suggestion has never been made—certainly never entertained by this Court—that the United States may impose cumulative penalties above and beyond those specified by State law for infractions of the State's criminal code by its own citizens. The affirmation of such a proposition would obliterate the distinction between the delegated powers of the federal government and those reserved to the States and to their citizens. The implications from a decision sustaining such an imposition would be startling. The concession of such a power would open the door to unlimited regulation of matters of state concern by federal authority. The regulation of the conduct of its own citizens belongs to the State, not to the United States. The right to impose sanctions for violations of the State's laws inheres in the body of its citizens speaking through their representatives. So far as the reservations of the Tenth Amendment were qualified by the adoption of the Eighteenth, the qualification has been abolished.

Reference was made in the argument to decisions of this Court holding that where the power to tax is conceded the motive for the exaction may not be questioned. These are without relevance to the present case. The point here is that the exaction is in no proper sense a tax but a penalty imposed in addition to any the State may decree for the violation of a state law. The cases cited dealt with taxes concededly within the realm of the federal power of taxation. They are not authority where, as in the present instance, under the guise of a taxing act the purpose is to usurp the police powers of the State.[20]

---

[20] *Bailey* v. *Drexel Furniture Co.,* 259 U. S. 20; *Hill* v. *Wallace,* 259 U. S. 44; *Linder* v. *United States,* 268 U. S. 5, 17.

In view of what has been said we do not consider the contention that the law is bad for want of the uniformity of operation required by Article I, § 8, of the Constitution.

The judgment is

*Affirmed.*

MR. JUSTICE CARDOZO, dissenting.

I think the judgment should be reversed.

Congress may reasonably have believed that, in view of the attendant risks, a business carried on illegally and furtively is likely to yield larger profits than one transacted openly by law-abiding men. Not repression, but payment commensurate with the gains is thus the animating motive. The gains in all likelihood will seldom be exhausted by a tax of $1,000. Congress may also have believed that the furtive character of the business would increase the difficulty and expense of the process of tax collection. The Treasury should have reimbursement for this drain on its resources. Apart from either of these beliefs, Congress may have held the view that an excise should be so distributed as to work a minimum of hardship; that an illegal and furtive business, irrespective of the wrongdoing of its proprietor, is a breeder of crimes and a refuge of criminals; and that in any wisely ordered polity, in any sound system of taxation, men engaged in such a calling will be made to contribute more heavily to the necessities of the Treasury than men engaged in a calling that is beneficent and lawful.

Thus viewed, the statute was not adopted to supplement or sanction the police powers of the states or of their political subdivisions. It was adopted, for anything disclosed upon its face or otherwise, as an appropriate instrument of the fiscal policy of the nation. The business of trading in things contraband is not the same as the business of trading in legitimate articles of commerce. Clas-

sification by Congress according to the nature of the calling affected by a tax (*State Board of Tax Commissioners* v. *Jackson*, 283 U. S. 527) does not cease to be permissible because the line of division between callings to be favored and those to be reproved corresponds with a division between innocence and criminality under the statutes of a state. Power is not abused because the shock of its impact is equitably distributed. The practice of medicine by an unlicensed charlatan may be taxed on a different basis from its practice by a licensed physician, irrespective of the fact that the charlatan is guilty of a crime. The practice of law by a disbarred lawyer may be taxed on a different basis from the practice of the same profession by a lawyer in good standing. With as much if not greater reason a like distinction may be drawn between the licensed and the unlicensed traffic in intoxicating liquors. The underlying principle in all these cases is as clear as it is just. A business that is a nuisance (*People* v. *Vandewater*, 250 N. Y. 83; 164 N. E. 864), like any other business that is socially undesirable, may be taxed at a higher rate than one legitimate and useful. *Fox* v. *Standard Oil Co.*, 294 U. S. 87, 100. By classifying in such a mode Congress is not punishing for a crime against another government. It is not punishing at all. It is laying an excise upon a business conducted in a particular way with notice to the taxpayer that if he embarks upon that business he will be subjected to a special burden. What he pays, if he chooses to go on, is a tax and not a penalty. *Nigro* v. *United States*, 276 U. S. 332, 353, 354. Cf. *Life & Casualty Insurance Co.* v. *McCray*, 291 U. S. 566, 574.

The judgment of the court, if I interpret the reasoning aright, does not rest upon a ruling that Congress would have gone beyond its power if the purpose that it professed was the purpose truly cherished. The judgment of the court rests upon the ruling that another purpose, not

professed, may be read beneath the surface, and by the purpose so imputed the statute is destroyed. Thus the process of psychoanalysis has spread to unaccustomed fields. There is a wise and ancient doctrine that a court will not inquire into the motives of a legislative body or assume them to be wrongful. *Fletcher* v. *Peck,* 6 Cranch 87, 130; *Magnano Co.* v. *Hamilton,* 292 U. S. 40, 44. There is another wise and ancient doctrine that a court will not adjudge the invalidity of a statute except for manifest necessity. Every reasonable doubt must have been explored and extinguished before moving to that grave conclusion. *Ogden* v. *Saunders,* 12 Wheat. 213, 270. The warning sounded by this court in the *Sinking-Fund Cases,* 99 U. S. 700, 718, has lost none of its significance. "Every possible presumption is in favor of the validity of a statute, and this continues until the contrary is shown beyond a rational doubt. One branch of the government cannot encroach on the domain of another without danger. The safety of our institutions depends in no small degree on a strict observance of this salutary rule." I cannot rid myself of the conviction that in the imputation to the lawmakers of a purpose not professed, this salutary rule of caution is now forgotten or neglected after all the many protestations of its cogency and virtue.

MR. JUSTICE BRANDEIS and MR. JUSTICE STONE join in this opinion.