In re STANDARD COMPOSITION CO.
No. 23740.

District Court, E. D. Michigan, S. D.
May 9, 1938.

John C. Lehr, U. S. Atty.; Peter Gilbert, Asst. U. S. Atty., and Arnold W. Lunger-hausen, Deputy Collector of Internal Revenue, all of Detroit, Mich., for Giles Kavanagh, Collector of Internal Revenue.

Raymond J. Kelly, Corp. Counsel, and John H. Witherspoon, Asst. Corp. Counsel, both of Detroit, Mich., for City of Detroit.

Emanuel A. Paperno, of Detroit, Mich., for Jacob P. Sumeracki, Wayne County Treasurer.

Donald L. Quaife, trustee, of Detroit, Mich., in pro. per.

TUTTLE, District Judge.

The question is presented in this case of whether certain provisions of title 9 of the Social Security Act, 42 U.S.C.A. § 1101 et seq., are enforceable against a bankrupt estate.

The Standard Composition Company, the debtor herein and a corporation engaged in the printing trade, became involved in serious financial difficulties in the latter part of 1937, and an involuntary petition for reorganization was filed under section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, on February 7, 1938. The court approved the petition, but, concluding that it was impossible to continue operations, ordered liquidation of its assets, pursuant to subsection (c) (8) of section 77B, 11 U.S.C.A. § 207(c) (8), unless a suitable plan of reorganization should be filed by March 14, 1938. No plan having been filed, the assets of the debtor except its accounts receivable were sold on April 6, 1938, yielding the high total, in the light of current economic conditions, of $33,000. Collections on accounts receivable, in the meantime, were made through the joint action of the trustee and the Reconstruction Finance Corporation, the largest secured creditor of the debtor. As a result, all claims entitled to priority over taxes except attorneys' fees (consisting of the claim of the Reconstruction Finance Corporation of approximately $12,500, preferred wage claims totalling $22,000, and administrative expenses other than attorneys' fees) have been paid in full.

The debtor was in arrears in the payment of practically all taxes. Among these were the taxes imposed by the state of Michigan under its Unemployment Compensation Act, Pub.Acts Mich.1936, Ex. Sess. No. 1, as amended by Pub.Acts Mich. 1937, No. 347, and by the federal government under title 9 of the Social Security Act, 42 U.S.C.A. § 1101 et seq., none of which were paid for the year 1937. Under that title of the Social Security Act, which took effect August 14, 1935, a tax was imposed on employers of eight or more persons for twenty or more weeks during the calendar year equivalent to 2 per cent. of the gross wages paid during 1937. By section 902 of the act, 42 U.S.C.A. § 1102, it is provided that the taxpayer may credit against the tax so imposed, to the extent

of 90 per cent. of the tax, the amount of contributions paid by him prior to the filing of the federal return into an unemployment fund created by state law where the unemployment compensation legislation has been approved by the federal Social Security Board. In 1936, the state of Michigan enacted an unemployment compensation law, which was duly approved by the federal authorities, and which, as amended August 5, 1937, Act No. 347, p. 346, § 13, imposed a tax on employers for 1937 equal to 2 per cent. of their gross wages.

By Treasury regulations, the return of the debtor for 1937 taxes under title 9 of the Social Security Act was required to be filed by January 31, 1938. An extension of time until April 1, 1938, to file its return with the Internal Revenue Department was obtained by the debtor. The court at the request of the trustee entered an order extending the time for filing the government's tax claim until April 20, and the trustee applied for a further extension of time for the filing of the debtor's return until April 15. The application of the trustee was denied, however, pursuant to Article 304 of Regulations 90 of the Bureau of Internal Revenue restricting the right of the Commission to grant extensions of time to sixty days from January 31, 1938. Had it been possible to secure an extension for even one week, the unemployment compensation taxes due the state could have been paid in full and the 90 per cent credit obtained on the federal tax, with the probability of a small distribution being made to general creditors.

The United States has accordingly filed a claim for the full amount of taxes imposed by the act for 1937. The trustee duly objected to its allowance in a sum greater than 10 per cent of the amount claimed, which objections were joined in by the City of Detroit and County of Wayne, each of which has a claim for taxes of equal rank as to priority with the United States.

▮ The court is of the opinion that the objections of the trustee are well taken and that the claim of the government for taxes imposed under the Social Security Act should be allowed at 10 per cent of the amount claimed (which includes interest), with the remaining 90 per cent disallowed. I think it unnecessary to consider the constitutional objections interposed by the trustee to its allowance, since I am convinced that the enforcement of 90 per cent of the tax assessed is prohibited by section 57j of the Bankruptcy Act, 11 U.S.C.A. § 93(j). That section reads as follows: "Debts owing to the United States, a State, a county, a district, or a municipality as a penalty or forfeiture shall not be allowed, except for the amount of the pecuniary loss sustained by the act, transaction, or proceeding out of which the penalty or forfeiture arose, with reasonable and actual costs occasioned thereby and such interest as may have accrued thereon according to law." By various decisions of the courts, it has been established that section 57j permits the collection of interest on taxes against a bankrupt estate but forbids the enforcement of penalties for nonpayment of taxes. New York v. Jersawit, 263 U.S. 493, 44 S.Ct. 167, 68 L.Ed. 405; United States v. Childs, 266 U.S. 304, 45 S.Ct. 110, 69 L.Ed. 299; In re Brown, 41 F.2d 228, D.C.Ohio; In re Messenger's Merchants Lunch Rooms, 7 Cir., 85 F.2d 1002.

▮▮ We are thus brought to the problem of whether the provisions of title 9 under which the taxpayer can secure a reduction of 90 per cent on his tax if he pays state unemployment taxes by a designated date but *must* pay *the entire tax if he fails to* pay by that date amount to a penalty within the meaning of section 57j. The label placed upon an imposition in a revenue measure is not decisive in determining its character. Although called a tax, it may in fact constitute a penalty, and, if so, the courts will not shut their eyes to the fact but will give it the same legal effect as a penalty which is designated as such. Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160; U. S. v. Constantine, 296 U.S. 287, 56 S.Ct. 223, 80 L.Ed. 233; Child Labor Tax Case, 259 U.S. 20, 42 S.Ct. 449, 66 L.Ed. 817, 21 A.L.R. 1432; Hill v. Wallace, 259 U.S. 44, 42 S.Ct. 453, 66 L.Ed. 822. In contract law, likewise, it appears that the label placed upon a provision is not controlling in determining its character as a penalty or otherwise.

"* * * Courts rightly pay little attention to the name given to a sum payable in terms on breach of contract. Calling a sum to be paid under a contract liquidated or stipulated damages, will not prevent the court from treating it as a penalty. Nor will the use of the word 'forfeit' or 'penalty' prevent the court in a proper case from

394

regarding as liquidated damages a sum named in a contract." 2 Williston, Contracts (1920) § 778.

■■■ It is difficult to set forth in words the elements of a penalty, and dictionary definitions are of little assistance. See the remarks of Chief Justice Taft in the Child Labor Tax Case, supra, at page 38, 42 S.Ct. at page 451. As contrasted with a tax, it has an essentially different aim, its primary purpose being to regulate conduct rather than to produce revenue, whereas with a tax the former purpose is only incidental. A tax is rarely imposed for an omission to act, while a penalty is frequently, if not usually, so based. Further distinction may be found in the facts that a penalty is more likely to be based upon a single act or failure to act rather than upon a series of acts, and that it also ordinarily has a less direct relation to the receipt of earnings by the one upon whom the burden falls which renders him able to pay it. Applying these criteria to the claim here in question, there can, in my opinion, be little doubt but what 90 per cent of it constitutes a penalty. The credit extended by the statute is conditioned upon an omission to perform an act, to wit, the payment of taxes. If the trustee had paid the state unemployment taxes on or before April 1, 1938, the federal tax claim would have been .2 per cent of the gross wages paid by the debtor during 1937; if paid on April 2, 2 per cent, or ten times as much. Under these circumstances, the additional exaction of 1.8 per cent has the characteristics of a penalty, no matter by what name it may be called. Cf. United States v. Constantine, supra.

■■■ In Carter v. Carter Coal Co., supra, an imposition designated a tax was placed by Congress upon coal producers, with a further provision that if the taxpayer conformed to the scheme of coal regulation prescribed by the act he would receive a rebate of 90 per cent of the amount paid. There, the formality was at least undergone of collecting the "tax," whereas with the present statute the credit can be claimed prior to payment. Yet even though the question there involved was a constitutional one where every presumption had to be indulged in favor of the act, each of the three justices submitting opinions held the "tax" to be a penalty, the dissenting opinion differing from the majority only in that it held the legislation to be properly within the scope of the federal power over inter-

state commerce. I do not see how the imposition involved in the Carter Case can be held a penalty and the provisions of title 9 of the Social Security Act allowing the taxpayer a 90 per cent credit for contributions to a state unemployment fund be properly called any other name than a penalty as to a taxpayer failing to qualify for the credit.

The constitutionality of title 9 of the Social Security Act was sustained in Steward Machine Co. v. Davis, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279, 109 A.L.R. 1293, but the opinion of the majority nowhere states that the credit provisions of the act do not constitute a penalty. The court there merely held that, in the light of the economic conditions surrounding the statute, these provisions do not result in such a degree of coercion of state Legislatures as to interfere with the sovereignty of the state. From the mere fact that its provisions were upheld as a valid exercise of the taxing power of the federal government, however, it does not follow that certain of its provisions are not penal in character. Thus, there is no question but what the federal income tax statute, including its provisions for an additional imposition in the event of late payment or failure to file a return is constitutional, yet the Internal Revenue Department itself does not attempt to enforce those provisions in a bankruptcy proceeding. United States v. Childs, supra.

■■■ I am further of the opinion that even if Steward Machine Co. v. Davis, supra, decided that the credit provisions of title 9 of the Social Security Act do not constitute a penalty for purposes of constitutional law, that holding is not determinative of the question of whether they constitute a penalty within the meaning of section 57j of the Bankruptcy Act, 11 U.S.C.A. § 93(j). Here, the problem is not a constitutional one, where the strong presumption in favor of the validity of an act of the Legislature affects the result, but rather that of ascertaining congressional intent in order to resolve an apparent conflict between two statutes. I hold that Congress in enacting social security legislation did not intend to amend the Bankruptcy Act by implication. In the determination of the legality and priority of federal tax claims, the Bankruptcy Act is paramount over other federal and state statutes. Guarantee Title & Trust Co. v. Title Guaranty & Surety Co., 224 U.S. 152,

32 S.Ct. 457, 56 L.Ed. 706; Missouri v. Ross, 299 U.S. 72, 57 S.Ct. 60, 81 L.Ed. 46. In many branches of bankruptcy law, the legal principles established are very different from those which govern solvent persons and corporations. The rules of set-off and of priority can be mentioned as only two out of many examples. In enacting section 57j, Congress was no doubt motivated by the fact that it was dealing with insolvent persons and corporations, unable to meet their obligations, and that any tax penalty collected would punish not the insolvent, but his creditors. Congress doubtless also recognized that the other purpose of a penalty—to induce the individual subject to a tax to pay it promptly—is inapplicable where he is unable to do so. Consequently, in dealing with tax claims in bankruptcy proceedings, Congress has said in effect: "All ordinary taxes are to be paid ahead of general claims, but the estate should not bear the burden of unusual and extraordinary exactions imposed for reasons which have no application in bankruptcy proceedings." I hold that 90 per cent. of the claim here in question comes within this policy, and is precisely the kind of exaction the enforcement of which against a bankrupt estate Congress sought to avoid. To hold otherwise is to invite the states and cities to escape the operation of 57j and increase their ordinary claims for taxes by rephrasing their statutes to eliminate the word "penalty" and to impose a tax in a gross sum equivalent to the present tax and penalty, with the extension of a credit or discount if the tax is paid before a named date.

A practical indication of what Congress would have provided if it had expressly dealt with the problem here faced is seen in the provisions of the Revenue Bill of 1938 passed by the House of Representatives and recommended by the Senate Finance Committee, which provides for the refund of 90 per cent. of taxes paid during 1937 under the statute in question by taxpayers who failed to qualify for the credit, if state unemployment taxes are paid within sixty days after passage of the act. H.R. 9682, § 810. It is thus apparent that Congress has recognized the hardship caused by the operation of the 90 per cent. credit provision even as to solvent corporations.

The assessment of a tax ten times as great as would have been assessed if the state unemployment taxes had been paid before April 1 is particularly harsh in the present case where the property was in the custody of the court when the return became due and where there was no negligence on the part of any party concerned with their payment. Every effort was being made at that time to effectuate a speedy liquidation with a maximum of yield and a minimum of administration expense, and the property of the debtor was actually converted into cash within two months from the filing of the petition for reorganization, but one week too late to satisfy the Internal Revenue Department.

 The Bankruptcy Act, 11 U.S.C.A. § 1 et seq., was drafted with the principle that "equality is equity" in mind, but there has been a tendency in recent years for the typical bankruptcy proceeding to resolve itself into a process in which one preferred party after another slices off a portion of the available assets, with little or none remaining for distribution to general creditors. This process ought not to be extended beyond the clear requirements of the controlling statutes. I am aware that there are decisions of other District Courts indicating a contrary interpretation of the Bankruptcy Act from that which I have here adopted. Matter of Richmaid Creamery, D.C., Cal., decided Dec. 7, 1937, unreported; Great Northern Hat Co., Inc., S.D., N.Y., decided Mar. 28, 1938, unreported. But those decisions do not, in my opinion, justify me in making a construction of congressional legislation which I consider both unrealistic and harsh.