118 F.2d 537 (1941)
In re INDEPENDENT AUTOMOBILE FORWARDING CORPORATION.
STATE OF NEW YORK
v.
UNITED STATES.
No. 127.
Circuit Court of Appeals, Second Circuit.
March 17, 1941.
*538 John J. Bennett, Jr., Atty. Gen. (Henry Epstein, Sol. Gen., of Albany, N. Y., and W. Gerard Ryan and Francis R. Curran, Asst. Attys. Gen., of counsel), for appellant.
Samuel O. Clark, Jr., Asst. Atty. Gen., J. Louis Monarch and Thomas G. Carney, Sp. Assts. to the Atty. Gen., and George L. Grobe, U. S. Atty., and Joseph J. Doran, Asst. U. S. Atty., both of Buffalo, N. Y., for appellee.
Before SWAN, AUGUSTUS N. HAND, and CHASE, Circuit Judges.
CHASE, Circuit Judge.
The Independent Automobile Forwarding Corporation, an employer of labor to whom and to whose employees the provisions of the Federal Social Security Act, c. 531, 49 Stat. 639, 42 U.S.C.A. § 1101 et seq., were applicable, was adjudicated a bankrupt in the District Court for the Western District of New York on April 26, 1938. The liquidation of its property in the bankruptcy proceedings brought into the hands of the trustee assets insufficient to pay in full the claims filed and allowed priority under § 64, sub. a (4) of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. a (4). The trustee filed his petition for instructions governing the payment of such priority claims and an order thereon was made on June 23, 1939, from which an appeal was taken to this court. Part of the claims involved were for taxes due the State of New York and part were for taxes due the United States, including some social security taxes and the amount of a credit allowable on the latter was changed by an amendment to the statute that became effective August 10, 1939. In accordance with a stipulation of the parties, an order was entered discontinuing that appeal without costs and remanding the case to the District Court for a resettlement of its order which would give effect to the amendment. The order was resettled in a way that granted priority to all the taxes claimed by the federal government and by the state and fixed the percentage payable thereon after allowing a credit on the social security taxes to the extent payments were to be made the State of New York on its claim for taxes which were to be contributions to its unemployment fund. This appeal is from the order so made.
The only claimants who will share in the distribution are the State of New York and the United States whose claims are for taxes for the year 1937, and as their claims, regardless of any issues on this appeal, exceed the amount available *539 for distribution, there must, in any event, be a pro rata distribution. That is not disputed, but what part of the amount due the government for social security taxes should be given priority is in dispute as well as the amount of the allowable credit. There is no controversy as to the amount due the State of New York or that its claim is entitled to priority. Nor is there any dispute but that the part of the government's claim which does not arise under the Social Security Act is also entitled to priority.
Turning now to the points in dispute, the first question is whether all taxes assessed under Title VIII and Title IX of the Social Security Act are to be granted priority under § 64, sub. a (4) of the Act as taxes owed by the bankrupt. Those imposed under Title IX and under § 804 of Title VIII are clearly taxes assessed against the employer and so against the bankrupt. The right to priority for so much as may be the correct amount of such taxes is clear but that amount, being in controversy in respect to the Title IX taxes, will later be considered separately herein. That leaves in the first problem only the nature of the liability of the bankrupt under the Social Security Act for taxes imposed under Title VIII, § 801.
Sec. 801 of Title VIII, effective in 1937, provided in so far as presently material that, "In addition to other taxes, there shall be levied, collected and paid upon the income of every individual a tax equal to the following percentages of the wages (as defined in section 811 [1011]) received by him after December 31, 1936, with respect to employment (as defined in section 811 [1011 of this chapter]) after such date * * *". And in § 802 (a) of the same Title it was provided that, "The tax imposed by section 801 [1011 of this chapter] shall be collected by the employer of the taxpayer, by deducting the amount of the tax from the wages as and when paid. Every employer required so to deduct the tax is hereby made liable for the payment of such tax, and is hereby indemnified against the claims and demands of any person for the amount of any such payment made by such employer."
This part of the Social Security Act laid a tax upon the employees of this bankrupt measured by a percentage of their wages and not a tax upon the bankrupt. It was taxed to a like extent under § 804 of Title VIII and the two taxes put the burden of social betterment upon both the employer and the employees. As to that part of these taxes which were thus imposed upon the employees the employer was, indeed, made a compulsory tax collector and made liable for the payment of such tax. The employer, however, was liable only as an agent bound to pay whether its duty to collect was performed or not. Such liability for a debt, instead of for taxes due and owing the government, does not form the basis of a claim entitled to priority under Sec. 64, sub. a (4). Gulf Oil Corp. v. Grady, 2 Cir., 110 F.2d 178; The City of New York v. Feiring, Trustee, 2 Cir., 118 F.2d 329, decided March 17, 1941; In re General Merchandise Corporation of America, D.C., 32 F.Supp. 805. Accordingly, the taxes assessed under Sec. 801 of Title VIII of the Social Security Act were erroneously allowed as a prior claim. Sec. 607 of the Revenue Act of 1934, 26 U.S. C.A. Int.Rev.Code, § 3661, providing that whenever any person is required to collect or withhold any tax from another person and pay it over to the United States, the tax so collected or withheld shall be held as a special trust for the United States has no application since there is no proof that any part of the government's claim is for such taxes actually collected or withheld. Even if they had been, only what could be traced could have constituted a trust fund. In re Frank, D.C., 25 F.Supp. 1005.
The remaining question involves the meaning of the credit provisions of § 902 (a) of the Social Security Act as amended Aug. 10, 1939, 42 U.S.C.A. § 1102. Before the amendment it provided that: "The taxpayer may credit against the tax imposed by § 901 [section 1011 of this chapter] the amount of contributions, with respect to employment during the taxable year, paid by him (before the date of filing his return for the taxable year) into an unemployment fund under a State law. The total credit allowed to a taxpayer under this section for all contributions paid into unemployment funds with respect to employment during such taxable year shall not exceed 90 per centum of the tax against which it is credited, and credit shall be allowed only for contributions made under the laws of States certified for the taxable year as provided in Section 903 [1103 of this chapter]."
As the bankrupt made no contributions to any such state fund, there would have been no allowable credit but for the *540 amendment of Aug. 10, 1939. That changed the time as of which credit should be allowed and in the respect here material provided that the credit should be given, "without regard to the date of payment, if the assets of the taxpayer are, at any time during the fifty-nine-day period following such date of enactment, in the custody or control of a receiver, trustee, or other fiduciary appointed by, or under the control of, a court of competent jurisdiction." This provision being applicable to this bankrupt taxpayer, the amount to be paid into the state unemployment fund is a factor to be given effect in determining the amount due on the government's claim. And as the amount so to be paid into the state fund is a tax for which the state has filed its claim in this proceeding the amounts due both the state and the federal governments are variables dependent upon each other since the assets are insufficient to pay both in full. The difficulty just mentioned, however, does not affect the construction of the credit statute and that will be discussed first.
The state contends that the credit should be 90 per cent of the taxes assessable under Title IX, although less than that will actually be paid into the state unemployment fund, leaving the allowable claim only 10 per cent of the taxes assessed. The reasoning in support of that position is that Congress never intended the government to collect as a tax for its use more than 10 per cent of the amount assessable and provided for the credit both to induce states to create unemployment funds (Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 525, 526, 57 S.Ct. 868, 81 L.Ed. 1245, 109 A.L.R. 1327; Steward Machine Co. v. Davis, 301 U.S. 548, 585, 57 S.Ct. 883, 81 L.Ed. 883, 109 A.L.R. 1293) and to persuade employers to make contributions promptly to such funds. From which it is argued that a claim for more than 10 per cent of the amount assessable is as to the excess a claim for a penalty not allowable in bankruptcy by virtue of § 57, sub. j, of the Bankruptcy Act, 11 U.S.C.A. § 93, sub. j.
Congress made it clear in the amendment of 1939, § 902 (i), 53 Stat. 1399, that it did not intend to impose a penalty but if one were actually imposed calling it a tax would not change its character. United States v. Constantine, 296 U.S. 287, 294, 56 S.Ct. 223, 80 L.Ed. 233; United States v. La Franca, 282 U.S. 568, 572, 51 S.Ct. 278, 75 L.Ed. 551.
We think the position of the appellant is untenable for the following reasons:
The tax is imposed by § 901 of Title IX, 49 Stat. 639, in unequivocal language as an excise tax upon every employer as defined in § 907 measured by stated percentages for named calendar years of the total wages payable by him with respect to employment during such calendar years. The amount of the tax as a tax is thus fixed and to be translated into terms of money by computation when the facts are known. This tax is not affected by § 902 providing for a credit against the tax under certain conditions. If the conditions are fulfilled the taxpayer need not pay in full but if they are not whatever may be due under the provisions of § 901 is all for taxes and none the less so because the taxpayer is given an opportunity to cut down the amount due by making contributions he can use as a credit on his tax liability. That § 902 is not coercive was held in Steward Machine Co. v. Davis, and Carmichael v. Southern Coal and Coke Co., both supra. That being so, there is no sound basis for making any distinction between the part of the tax imposed by § 901 which might be adjusted by a credit allowable under § 902 and that which might not. The tax is indivisible and no part is a penalty for not fulfilling the conditions of § 902. The taxpayer is but accorded a right to claim a credit available in lieu of payment pro tanto upon compliance with conditions named without requiring him to meet the conditions and without affecting the amount assessable as a tax.
It follows that the language of § 902 controls in determining the amount of the claim under § 901 which is allowable against the bankrupt estate. The credit being limited to what is contributed to the state fund, which will be less than 90 per cent of the tax, the amount of the claim allowable is the difference between the amount assessable and the amount to be treated as contributed to the state fund. The mutual dependence of these amounts, due to the fact that payments cannot be made in full to either claimant, requires for their determination the use of mathematics adequate to give effect to the fact that they vary with each other.
The government urged the use of an algebraic formula by which the problem was put into a quadratic equation which when solved showed that payment to the claimants *541 of 26.97 per cent of the allowable part of their claims would divide the entire available fund pro rata between them. The use of that will now give the correct amount payable to each claimant when the tax assessed under § 801, Title VIII, is disregarded in the computation because allowable only as a general claim. The state insists that no distinction should be made between the present situation and one where the assets are sufficient to pay completely. That is obviously erroneous and the more simple mathematical method of computation it advocates will not suffice here, since it will give the correct result only where the amounts are not mutually dependent variables.
Because the original appeal was allowed to be withdrawn in accordance with the stipulation to resettle the order by giving effect to the amendment of Aug. 10, 1939, it has been argued that the question whether taxes due the government under § 801 of Title VIII are entitled to priority is no longer open and that we are bound to treat that part of the government's claim as a prior one because it was so held below in the order from which the first appeal was taken. The short answer is that that order never was considered on its merits in this court and never became final. On the remand the court was to determine how the fund available for distribution to the only two claimants who could share should be divided between them. That necessarily involved the question of priority in all its aspects and left it an open issue.
Order reversed and cause remanded for a determination of the amounts allowable on the claims of each of the claimants in accordance with the above.