In the

# United States Court of Appeals

### For the Seventh Circuit

No. 05-2174

NORTHERN ILLINOIS CHAPTER OF ASSOCIATED
BUILDERS AND CONTRACTORS, INC., and
LOBERG EXCAVATING, INC.,

*Plaintiffs-Appellants*,

*v.*

JACK LAVIN, Director of the Illinois Department
of Commerce and Economic Opportunity,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 04 C 50357—**Philip G. Reinhard**, *Judge.*

ARGUED OCTOBER 28, 2005—DECIDED DECEMBER 9, 2005

Before EASTERBROOK, MANION, and ROVNER, *Circuit
Judges.*

EASTERBROOK, *Circuit Judge.* Illinois subsidizes the
construction or renovation of renewable-fuel plants—
principally facilities that make ethanol. One condition of a
grant is that the recipient "enter into a project labor agree-
ment". 20 ILCS 689/15(a)(3). The agreement must establish
wages and benefits and must include a no-strike clause. 20
ILCS 689/25(a). As a practical matter such agreements can
be achieved only by employers that recognize and bargain

with labor unions. An association of non-union contractors (and one of its members) filed this suit under 42 U.S.C. §1983, seeking a declaratory judgment that the requirement of a project labor agreement is preempted by federal law. See *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103 (1989). Relying on *Building & Construction Trades Council v. Associates Builders & Contractors of Massachusetts*, 507 U.S. 218 (1993) (*Boston Harbor*), the district court entered judgment for Illinois.

Boston required its contractors to negotiate project labor agreements under which all workers would be referred by union hiring halls and would be obliged to pay dues under union-security clauses; in exchange the unions would agree to forego strikes. Federal law permits such prehire agreements in the construction industry. See 29 U.S.C. §158(e), (f). See also *Jim McNeff, Inc. v. Todd*, 461 U.S. 260 (1983); *Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645 (1982). *Boston Harbor* holds that a public owner has the same entitlement as a private owner to decide how it will manage a construction project. Federal law preempts all state regulation of those aspects of labor relations that are arguably protected, arguably prohibited, or left to the domain of market forces. See *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959); *Machinists v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132 (1976). A city or state acting as proprietor, however, is a market participant rather than a market regulator. *Boston Harbor*, 507 U.S. at 230-31.

The district court concluded that Illinois is acting as a proprietor in its renewable-fuels program. The problem with this view is that the state is not the proprietor *of* anything. It does not own any renewable-fuels project, either before or after granting a subsidy. The project's owner, not the state, is its proprietor. Boston hired the general contractors for the project; Illinois does not hire contractors. Nor does it invest in the projects through

bonds. Contrast *Hotel Employees v. Sage Hospitality Resources, LLC*, 390 F.3d 206 (3d Cir. 2004). All it has done is set a condition on grants to private proprietors.

To say that Illinois is not acting as a proprietor is not, however, to resolve the main question. *Boston Harbor* holds that *if* a state acts as a proprietor, then it may insist on the sort of prehire agreements that federal labor law permits private owners to adopt. It does not hold that *only if* a state acts in this capacity is its decision compatible with federal law. The Court stated the rule this way: "[T]he NLRA prevents a State from regulating within a protected zone, whether it be a zone protected and preserved for market freedom, see *Machinists*, or for NLRB jurisdiction, see *Garmon*. A State does not regulate, however, simply by acting within one of those protected areas. . . . We have held consistently that the NLRA was intended to supplant state labor *regulation*, not all legitimate state activity that affects labor.*" Boston Harbor*, 507 U.S. at 226-27 (emphasis in original). The need to distinguish regulation from other governmental activity is the Court's theme in *Boston Harbor*.

So is the conditional offer of a subsidy for renewable-fuels plants a form of regulation? It is hard to see how it could be: Illinois does not seek to affect labor relations generally. Both labor and management are free to make independent decisions with respect to all activities other than those for which the state pays.

The question "is a condition on the receipt of a grant a form of regulation?" comes up frequently, and the answer almost always is negative. Consider, for example, the many conditions on grants to states. The national government lacks the authority to regulate how states behave; it cannot direct them to pass or enforce laws. See *Printz v. United States*, 521 U.S. 898 (1997). But it can set conditions on grants, and a state's decision to take the money obliges it to

respect the conditions. Thus *South Dakota v. Dole*, 483 U.S. 203 (1987), held that states that accept federal highway-construction money must set and enforce speed limits specified by Congress. That condition on the subsidy was not, the Court held, a form of forbidden regulation.

Similarly Congress lacks the authority to regulate what physicians say about abortion but may set conditions on federal grants and require those who accept the money to follow federal rules for family-planning advice. *Rust v. Sullivan*, 500 U.S. 173 (1991). The condition differs from regulation because any physician or clinic may decline the offer. The list of similar decisions is lengthy. See, e.g., *National Endowment for the Arts v. Finley*, 524 U.S. 569 (1998); *Buckley v. Valeo*, 424 U.S. 1, 57 & n.65 (1976).

Conditions on spending may become regulation if they affect conduct other than the financed project. *Wisconsin Department of Industry v. Gould Inc.*, 475 U.S. 282 (1986), illustrates this limit. Wisconsin refused to purchase goods or services from firms that had violated the National Labor Relations Act three or more times during the preceding five years. The Supreme Court understood this as an effort to control how employers behave when *not* dealing with the state, and thus as a form of regulation. "Because Wisconsin's debarment law functions unambiguously as a supplemental sanction for violations of the NLRA, it conflicts with the Board's comprehensive regulation of industrial relations in precisely the same way as would a state statute preventing repeat labor law violators from doing any business with private parties within the State*." Id*. at 288. See also the discussion of *Gould* in *Boston Harbor*, 507 U.S. at 228-30. Our decision in *Metropolitan Milwaukee Association of Commerce v. Milwaukee County*, 2005 U.S. App. LEXIS 26467 (7th Cir. Dec. 5, 2005) likewise concludes that a purchasing rule prescribing how employers must handle labor relations in all aspects of their business is preempted by federal labor law. Illinois is concerned

exclusively with how subsidized renewable-fuels projects contract for labor; its condition is project-specific.

*Boston Harbor* is just one illustration of the proposition that states may act in commerce without regulating commerce. The situation in this litigation is another illustration. See also *Colfax Corp. v. Illinois State Toll Highway Authority*, 79 F.3d 631 (7th Cir. 1996). Any owner or contractor that does not want to deal with organized labor may indulge that preference. The lure of a subsidy may lead firms at the margin to reach labor agreements that they would not otherwise have signed, but if an incentive to change one's conduct is a form of "regulation" then *South Dakota v. Dole*, *Rust v. Sullivan*, and many other cases were wrongly decided. Federal labor laws give both workers and employers a right to avoid unions, but states may pay them to surrender that right even though states can't confiscate it by sumptuary legislation. See also *Building & Construction Trades Department v. Allbaugh*, 295 F.3d 28 (D.C. Cir. 2002) (executive order specifying conditions under which project-labor agreements are appropriate for federally subsidized construction projects is compatible with federal labor law).

If (as seems likely) Illinois has taken the approach in this law because state officials want to assist organized labor as well as the farmers who supply the grain to be made into ethanol and the owners of ethanol plants, that is neither a surprise nor a reason for invalidity. Most legislation is the product of coalitions among interest groups. Boston wanted to clean up its harbor, but there can be little doubt that it also wanted to shower benefits on workers who were the incumbents' political supporters. Many a public project is bigger or more expensive than it need be, in order to enlist the support of multiple interest groups. Federal preemption doctrine evaluates what legislation *does*, not why legislators voted for it or what political coalition led to its enactment. This statute does not affect people who spurn the state's

largesse. Because Illinois has limited its condition to the project financed by the subsidy, it has not engaged in "regulation" under the approach of *Boston Harbor* or *Gould*, and its conditions are not preempted by federal labor law.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*