# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1592

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

PRINCE T. BEY,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:08-cr-0046-1—**Sharon Johnson Coleman**, *Judge.*

ARGUED APRIL 3, 2013—DECIDED JULY 9, 2013

Before POSNER, WOOD, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Prince Bey appeals his conviction for conspiring to possess heroin with intent to distribute and for aiding and abetting the distribution of heroin in violation of 21 U.S.C. § 841(a)(1) and § 846. Bey alleges three errors on appeal: first, that the district court erred by not instructing the jury on an entrapment defense; second, that there was insufficient evidence of conspiracy to allow the admission into evidence

of out-of-court statements made by his alleged co-conspirator under the co-conspirator exclusion from the rule against hearsay; and third, that there was insufficient evidence to support his conviction for the conspiracy offense. We are not persuaded by any of these arguments.

I. *Entrapment Defense*

We can dispense with the entrapment issue quickly before turning to the facts of the case. Bey was charged for his involvement in a heroin transaction in which the buyer was a government informant. Before trial, Bey suggested that he planned to raise an entrapment defense and submitted two proposed jury instructions on the defense. Entrapment occurs when the government induces a person to commit an offense and he lacked the predisposition to do so without the inducement. See *United States v. Plowman*, 700 F.3d 1052, 1057 (7th Cir. 2012); see also *Mathews v. United States*, 485 U.S. 58, 62-63 (1988). During trial, however, Bey abandoned the entrapment defense. At several points during the government's presentation of its case, the district judge prohibited the government from presenting evidence of Bey's predisposition to involvement in the transaction because Bey had not yet put on an entrapment defense. After the government rested its case, Bey chose to rest without raising an entrapment defense: Bey did not testify, he called no witnesses, and his counsel withdrew his proposed entrapment instructions. Accordingly, the district judge followed Bey's decision and never instructed the jury on the entrapment defense.

This is about as clear a record of waiver as one can imagine. Bey waived the entrapment defense and cannot argue on appeal that the judge should have given the entrapment instruction. See *United States v. Walton*, 255 F.3d 437, 441 (7th Cir. 2001) ("a waived issue is unreviewable because a valid waiver leaves no error to correct and extinguishes all appellate review of the issue"). In the context of appellate challenges to jury instructions, we have held that a defendant waives an objection to jury instructions when he "approved of the instructions at issue." See *United States v. DiSantis*, 565 F.3d 354, 361 (7th Cir. 2009), citing *United States v. Pree*, 408 F.3d 855, 872 (7th Cir. 2005). The same logic applies when a party approves not giving an instruction. *E.g.*, *United States v. Ewings*, 936 F.2d 903, 908-09 (7th Cir. 1991) (finding waiver of objection to jury instructions because defense asked judge not to give instruction). Here, Bey considered an entrapment defense, laid some of the groundwork for it outside the hearing of the jury, and then withdrew his own proposed entrapment instruction. He waived the issue for appellate review. We now turn to the conspiracy issues.

II. *The Conspiracy Issues*

 A. *Factual and Procedural Background*

  1. *The Heroin Transaction*

In the fall of 2006, the FBI became interested in a drug dealer named Vernell Hemphill. The FBI wanted to use a confidential informant who went by the name "Chub" to bust Hemphill for selling drugs, but there was a prob-

lem. Though Chub was familiar with Hemphill, he did not know him well enough to arrange a deal. This is where Bey came in. Bey was friends with Chub, and Chub knew that Bey had previously bought cocaine from Hemphill. Over several weeks, Chub used Bey to arrange the purchase of 100 grams of heroin from Hemphill. (Because the conspiracy offense requires proof of an agreement to commit a crime with someone other than a government informant, like Chub, the focus is on whether the evidence shows that Bey conspired with Hemphill to sell drugs to Chub.)

Many of the communications between Chub and Bey were recorded, and those recordings provide a fairly clear chronology of events. On October 25, 2006 Chub called Bey to tell him that he was "thinkin' about openin' up . . . a line" and asked Chub if he knew of anyone selling good heroin. Bey responded "well let's do it" and told Chub that he knew Hemphill sold high quality heroin. Chub then asked Bey if he knew how much Hemphill charged. Bey responded, "I don't know, but I could find out, I can, I can find all that out for you immediately."

Bey then went to talk with Hemphill. According to Bey's signed written statement made after his arrest — the admission of which has not been challenged — Bey next went to a store where Hemphill worked and told Hemphill that Chub was interested in buying heroin. At this meeting Hemphill expressed reservations about dealing with Chub because he had heard that Chub worked for the government. Bey

assured Hemphill that Chub was not a government informant, and his reassurance appears to have satisfied Hemphill, who then quoted a price of $7,500 for 100 grams of heroin. Bey relayed this information to Chub on November 3, 2006.

On November 8, 2006, Chub called Bey to tell him that he was getting ready to do the deal and that he needed Bey "to take care of everything." On the same call, Chub told Bey that he would give him "a stack" ($1,000) for helping to arrange the deal.

The deal occurred on November 17, 2006. That afternoon Bey called Chub and told him that Hemphill was ready to do the deal. After picking up another man for some muscle, Chub picked up Bey and they drove to the clothing store where Hemphill worked. Bey introduced Chub to Hemphill, and Chub and Hemphill went into a back room to count the money. The money added up, and Hemphill gave Chub the heroin in return for the money. Hemphill testified at trial that he then paid Bey a $200 or $300 finder's fee for his work in setting up the transaction. Bey, Chub, and the muscle then left the store and returned to their respective homes. On their way home, Bey asked Chub to "Gimme five," meaning $500 dollars, and Chub responded that he would pay him later. At trial, Hemphill also testified that he would not have done the deal if Bey had not vouched for Chub.

### 2. *The Trial*

Before trial, the government made a *Santiago* proffer to admit statements of Bey's alleged co-conspirator

Hemphill. Under *Santiago*, a district judge may decide before trial to admit co-conspirator testimony based on the government's proffer that it has sufficient evidence to prove the existence of a conspiracy by a preponderance of the evidence at trial. See *United States v. Santiago*, 582 F.2d 1128, 1130-31 (7th Cir. 1978), overruled on other grounds by *Bourjaily v. United States*, 483 U.S. 171 (1987). This procedure helps streamline trials by permitting the government to introduce co-conspirator testimony at any point during the trial rather than waiting until after it has provided sufficient independent proof of conspiracy.

Hemphill's out-of-court statements included conversations between Hemphill and Bey about the price of the heroin and conversations that Hemphill had with Chub during the deal. To establish the existence of a conspiracy between Bey and Hemphill, at trial the government relied on Bey's written statement, the recorded conversations, and Hemphill's trial testimony. This evidence showed that Bey recommended Hemphill to Chub as a heroin supplier, that Bey vouched for Chub, that Bey relayed the price between Hemphill and Chub, and that Hemphill paid Bey a finder's fee.

Following the presentation of the government's case, Bey moved for a directed verdict under Rule 29, arguing that the government failed to prove the existence of an agreement between Hemphill and Bey — a necessary element of the conspiracy offense. The judge denied the motion and allowed the case to go to the jury. The jury convicted Bey of conspiring to distribute heroin and

aiding and abetting the distribution of heroin, and the judge sentenced him to 110 months in prison.

B. *Analysis*

Bey argues first that the district judge erred in allowing the government to introduce Hemphill's out-of-court statements because the government failed to provide sufficient evidence of a conspiracy between Hemphill and Bey. Second, Bey argues that even with these statements there was insufficient evidence to support his conspiracy conviction. We take each argument in turn.

1. *Admissibility of Co-conspirator Statements*

Bey argues that the district judge erred in allowing the government to introduce out-of-court statements made by his alleged co-conspirator, Vernell Hemphill, because there was insufficient evidence to establish the existence of a conspiracy between Hemphill and Bey. Ordinarily out-of-court statements introduced into evidence to prove the truth of their contents are barred by the prohibition against hearsay. See Fed. R. Evid. 802. Out-of-court statements made by a co-conspirator, however, are not hearsay if the statements were "made by the party's co-conspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). To establish admissibility, the government must show by a preponderance of the evidence that a conspiracy existed between the defendant and the declarant and that the statements were made in furtherance of the conspiracy. See *United*

*States v. Cruz-Rea*, 626 F.3d 929, 937 (7th Cir. 2010). An unlawful conspiracy exists when two or more people agree to commit an unlawful act, and the defendant "knowingly and intentionally" joins in the agreement. See *United States v. Johnson*, 592 F.3d 749, 754 (7th Cir. 2010). We ultimately find there was sufficient evidence of conspiracy to admit the statements.

Bey does not direct us to specific statements that he contends were improperly admitted, an omission that we might treat as a waiver of the issue. To be on the safe side, though, we have done an independent review of the record that reveals only one conversation that could arguably be hearsay. The majority of Hemphill's statements were not hearsay: Any accounts provided by Bey of conversations he had with Hemphill were admissible under the party admission exclusion, see Fed. R. Evid. 801(d)(2)(A), and Hemphill's in-court testimony was not hearsay because it was provided in open court. The only statements made by Hemphill that were arguably hearsay occurred in a recorded conversation between Chub and Hemphill describing the deal as it was happening.[1] This recording included a description of Hemphill counting the money and Hemphill and Chub discussing doing business again in the future, but

---

[1] We say arguably because much of what Hemphill said as the drug transaction was happening would not have been statements offered for their truth, and those that were would probably fit under the present sense impression exception to the rule against hearsay. See Fed. R. Evid. 803(1); *United States v. Ruiz*, 249 F.3d 643, 646 (7th Cir. 2001).

the conversation itself did not implicate Bey in a conspiracy. Hemphill made no direct or indirect reference to Bey or Bey's role in the transaction during the conversation.

Because this admitted conversation did not implicate Bey in the alleged conspiracy, we see no possibility that there was any error, let alone prejudicial error, in admitting any evidence under the co-conspirator exclusion to the hearsay rule. Moreover, as discussed in the next section, there was sufficient evidence of conspiracy to permit the evidence to be admitted under the co-conspirator exclusion.

### 2. *Sufficiency of the Evidence*

We turn now to whether there was sufficient evidence to support Bey's conspiracy conviction. We review challenges to the sufficiency of the evidence deferentially. We will overturn a conviction for insufficient evidence only if, after viewing all of the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319 (1977); *United States v. Khattab*, 536 F.3d 765, 769 (7th Cir. 2008). When a government agent — like Chub — is involved in the transaction, a conspiracy conviction requires proof that the defendant conspired with someone other than the government agent. See *United States v. Corson*, 579 F.3d 804, 811 (7th Cir. 2009). This means that Bey cannot have conspired with Chub as a matter of law, so the issue here is whether there was

sufficient evidence to find that Bey conspired with Hemphill to sell the heroin to Chub.

The government's evidence of a conspiracy between Bey and Hemphill was not overwhelming, but it was enough. The clearest evidence was Hemphill's testimony that he paid Bey a share of his take for bringing Chub to the deal. This evidence of payment by Hemphill, combined with the evidence that showed Bey had purchased drugs from Hemphill in the past, relayed price and quantity information between Hemphill and Chub, attended the transaction, and reassured Hemphill that Chub was trustworthy, was enough to allow a reasonable trier of fact to find not only that Bey agreed to help Chub buy the heroin, for which he could not be convicted, but also that he knowingly and intentionally agreed with Hemphill to help him sell the heroin.

To prove the existence of a conspiracy, the government must show that Bey "knowingly and intentionally" joined in an agreement with another person to commit an unlawful act. *Johnson*, 592 F.3d at 754; *United States v. Rollins*, 544 F.3d 820, 835 (7th Cir. 2008). Depending on the specific circumstances, a person who acts as a middleman or broker for a drug deal between a buyer and a seller can conspire with the buyer, the seller, or both. *E.g.*, *United States v. Gilmer*, 534 F.3d 696, 702-03 (7th Cir. 2008) (middleman conspired with seller); *United States Lechuga*, 994 F.2d 346, 350 (7th Cir. 1993) (en banc) (plurality opinion) (middleman conspired with seller to distribute drugs). But not all middlemen conspire with both the buyer and the seller. See *United States v. Thomas*, 284

F.3d 746, 753, 756 (7th Cir. 2002) (finding insufficient evidence that defendant who brokered four spot sales of crack between buyer and sellers conspired with buyer); *United States v. Contreras*, 249 F.3d 595, 599-600 (7th Cir. 2001) (insufficient evidence of conspiracy between defendant and middleman because record did not reveal middleman had "stake in the success" of the operation).

In a case, like this one, in which a government informant brings a middleman to the deal, we must make sure that there is an evidentiary basis for the jury to conclude beyond a reasonable doubt that the middleman had an agreement with the seller to distribute drugs in addition to the agreement to help the informant buy drugs. It is important to pay attention to the role played by each participant in the transaction so as not to turn the conspiracy offense into "a simple substitute for a drug distribution conviction." *United States v. Rivera*, 273 F.3d 751, 756 (7th Cir. 2001).

Evidence that the middleman had a clear stake in the seller's sales is typically sufficient to permit the jury to infer the existence of an agreement with the seller. See *United States v. Colon*, 549 F.3d 565, 568-70 (7th Cir. 2008) (recognizing the following as evidence that distinguishes a conspiracy from a buyer-seller relationship: sales on credit, agreement to look for customers, payment of commission, provision of significant business advice); cf. *Contreras*, 249 F.3d at 600 (insufficient evidence of conspiracy between a drug seller and a middleman where there was no evidence that the middleman "had a stake"

in the seller's sales). In the absence of evidence of an explicit agreement, such evidence provides the jury with a basis for choosing the inference that the middleman had an additional agreement with the seller over the competing inference that the middleman was working with only the informant buyer. Cf. *United States v. Williams*, 592 F.3d 749, 755 (7th Cir. 2010) ("In this situation, the evidence is essentially in equipoise; the plausibility of each inference is about the same, so the jury necessarily would have to entertain a reasonable doubt on the conspiracy charge."). Because the jury was presented with such evidence here, it had an adequate basis to conclude that Bey had an agreement with Hemphill.

Hemphill testified that he paid Bey a finder's fee for his help in arranging the sale. This testimony, when paired with the extensive evidence that Bey was acting as a middleman between Hemphill and Chub, provided the necessary support for the inference that Bey agreed to help Hemphill sell heroin. The fact of payment provided probative evidence that Bey had a shared stake in Hemphill's sale and allowed the other evidence presented by the government to be read in a reasonable manner consistent with a conspiracy between Bey and Hemphill. With the evidence of payment, it was reasonable for the jury to infer that Bey recommended Hemphill to Chub and helped organize the deal not just because Chub asked him to but because he also had a separate agreement with Hemphill to help promote Hemphill's drug distribution enterprise. In other words, Bey was a broker working for both sides.

This evidence of agreement to commit the unlawful act of heroin distribution is sufficient to support Bey's conspiracy conviction. Although Bey suggests that his role in the transaction was too minimal to support a conspiracy conviction because he did not decide the price, quantity, or other terms of the transaction, the conspiracy offense does not require such high-level participation. See *United States v. Garcia*, 45 F.3d 196, 198-99 (7th Cir. 1995) (affirming conviction of middleman who did not set the price, quantity, or terms of transaction).

The judgment of the district court is AFFIRMED.