In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 13-2662 & 13-2681

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

MAZHER ALI KHAN AND
SHAKIL WAMIQ,

*Defendants-Appellants.*

Appeals from the United States District Court for the
Eastern District of Wisconsin.
No. 12 CR 88 — **Lynn Adelman**, *Judge.*

ARGUED FEBRUARY 24, 2014 — DECIDED OCTOBER 24, 2014

Before FLAUM and ROVNER, *Circuit Judges*, and KENDALL, *District Judge.*[*]

KENDALL, *District Judge.* A jury convicted Shakil Wamiq of four counts of knowingly shipping, transporting, receiving, possessing, selling, distributing, or purchasing contraband

[*] The Honorable Virginia M. Kendall, District Judge for the United States District Court, Northern District of Illinois, sitting by designation.

cigarettes in violation of 18 U.S.C. § 2342(a) of the Contraband Cigarette Trafficking Act ("CCTA"). The same jury convicted Mazher Ali Khan, who acted independently of Wamiq, of three counts of knowingly shipping, transporting, receiving, possessing, selling, distributing, or purchasing contraband cigarettes in violation of 18 U.S.C. § 2342(a). Both Wamiq and Khan appeal their respective convictions, forfeitures, and denial of their post-trial motions. Wamiq also appeals his sentence. Finding no error, we affirm.

## I

In 2011, agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives ran a warehouse in Milwaukee, Wisconsin as part of an undercover investigation into the trafficking of contraband cigarettes. The Milwaukee warehouse did not have any exterior signage. Nor was there any signage inside the Milwaukee warehouse. The only warehouse equipment inside the warehouse was a hand truck used to move cases of cigarettes and some old pallets. Although there was an office inside the Milwaukee warehouse, there were no computers. Apart from some basic furnishings, the only piece of office equipment in the Milwaukee warehouse was a money counter.

ATF agents purchased cigarettes from two tobacco companies. One company sold cigarettes, primarily Newport brand cigarettes, to the ATF, while the other provided cigarettes, primarily Marlboro and Parliament brand cigarettes, to the ATF on consignment. The latter company simply accepted whatever proceeds the ATF received from purchasers of the cigarettes provided by that company as payment for its

cigarettes. ATF used the Milwaukee warehouse to store and sell the cigarettes they received from the tobacco companies. ATF agents sold the cigarettes, none of which bore any evidence of the payment of applicable State or local cigarette taxes, to various purchasers, to include Wamiq and Khan.

Khan first received cigarettes from the Milwaukee warehouse in May 2011. Mohammad Uddin purchased ten cases of Marlboro cigarettes from the Milwaukee warehouse on May 19, 2011. Each case contained sixty cartons of cigarettes; each carton contained ten packs of cigarettes; and each pack of cigarettes contained twenty cigarettes. He paid a total of $15,000 in cash, cash he received from Khan, for the ten cases of Marlboro cigarettes, which he placed in his silver Nissan. After completing his purchase, Uddin met Khan a short distance from the Milwaukee warehouse and transferred the ten cases of Marlboro cigarettes to Khan's blue minivan before returning to the Milwaukee warehouse to purchase additional cigarettes.

Uddin returned to the Milwaukee warehouse on June 30, 2011, this time accompanied by Khan. Uddin drove Khan's blue minivan to the Milwaukee warehouse and purchased twenty-six cases of cigarettes. He paid $39,000 in cash and then he and Khan left the Milwaukee warehouse. A short while later, Uddin returned to the Milwaukee warehouse in his silver Nissan and purchased additional cigarettes.

Uddin purchased cigarettes from the Milwaukee warehouse for Khan three more times. Uddin paid $75,000 in cash for fifty cases of cigarettes on July 8, 2011; $78,000 in cash for fifty-two cases of cigarettes on July 15, 2011; and $75,000 in

cash for fifty cases of cigarettes on September 21, 2011. Uddin drove Khan's yellow conversion van to the Milwaukee warehouse to make these three purchases and then returned the van and the cigarettes to Khan. Neither Uddin nor Khan received any receipts or invoices for these five purchases. After each purchase, Khan transported the cigarettes purchased at the Milwaukee warehouse to Illinois.

Uddin also orchestrated four cigarette purchases from the Milwaukee warehouse for Wamiq. Uddin's first purchase for Wamiq took place on October 26, 2011. The two met at a gas station near the Milwaukee warehouse where Wamiq gave Uddin the money necessary to purchase cigarettes from the Milwaukee warehouse. Uddin then went to the Milwaukee warehouse and used the money provided by Wamiq, $257,000, to purchase 158 cases of cigarettes. After loading the cigarettes into a rented truck, Uddin met up with Wamiq on the highway. Wamiq, Uddin, and Uddin's brother then drove back to Illinois as part of a three-vehicle convoy. Wamiq unloaded the cigarettes from the rented truck at a warehouse in Illinois.

Wamiq used Uddin to purchase cigarettes at the Milwaukee warehouse three more times. Using money received from Wamiq, Uddin paid $202,500 for 135 cases of cigarettes on December 8, 2011; $273,000 for 182 cases of cigarettes on December 21, 2011; and $132,000 for 88 cases of cigarettes on February 14, 2012. Neither Uddin nor Wamiq received any receipts or invoices for these four purchases.

An indictment charged Uddin, Wamiq, and Khan with conspiring to violate the CCTA. The indictment also charged Uddin with nine counts of violating the CCTA; Wamiq with

four counts of violating the CCTA; and Khan with five counts of violating the CCTA. Uddin entered a plea agreement and testified at trial against Wamiq and Khan. At trial, Uddin explained his role in each of the purchases he made for Wamiq and Khan.

This was not the first undercover ATF investigation in which Wamiq purchased cigarettes from an ATF warehouse. A criminal complaint filed in the Northern District of Illinois charged Wamiq with purchasing contraband cigarettes from an ATF warehouse in Hickory Hills, Illinois. This criminal complaint was dismissed.

Prior to trial in this case, Wamiq moved to exclude any evidence related to the criminal complaint filed in the Northern District of Illinois under Fed. R. Evid. 403 and 404(b). The district court denied Wamiq's motion because it concluded that the evidence was admissible to prove motive or plan. The district court also concluded that Wamiq's cigarette purchases in the undercover ATF investigation in Illinois were direct evidence of guilt to the extent that Wamiq claimed that he had purchased enough tax stamps to apply to the cigarettes he purchased in both Wisconsin and Illinois.

A jury convicted Wamiq of four counts of knowingly shipping, transporting, receiving, possessing, selling, distributing, or purchasing contraband cigarettes and convicted Khan of three counts of knowingly shipping, transporting, receiving, possessing, selling, distributing, or purchasing contraband cigarettes. Following their convictions, Wamiq and Khan separately moved for judgment of acquittal. The district court denied both motions. Khan also moved to arrest judgment,

which Wamiq joined. The district court denied this motion too. The district court sentenced Wamiq to twenty-one months imprisonment, three years of supervised release, ordered restitution in the amount of $220,882.20, and forfeiture in the amount of $472,993.20. The district court sentenced Khan to two years probation, restitution in the amount of $58,150.00, and forfeiture in the amount of $125,308.80, in addition to his conversion van.

## II

The CCTA makes it a crime "for any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes." 18 U.S.C. § 2342(a). "Congress enacted the CCTA to enable federal enforcement agencies to assist states in curtailing interstate cigarette trafficking, which drains billions of dollars in tax revenues from state and local governments each year and often serves as a source of illicit financing for organized crime and terrorist organizations." *United States v. Mohamed*, No. 13-2368, slip op. at 9 (7th Cir. Jul. 22, 2014) (citations omitted). The CCTA defines "contraband cigarettes" as "a quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found, if the State or local government requires a stamp, impression, or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes." 18 U.S.C. § 2341(2).

But the CCTA's definition of "contraband cigarettes" does not apply to cigarettes in the possession of certain persons. *See* 18 U.S.C. §§ 2341(2)(A)–(D). For instance, the definition does

not apply to a person "licensed or otherwise authorized by the State where the cigarettes are found to account for and pay cigarette taxes imposed by such State and who has complied with the accounting and payment requirements relating to such license or authorization with respect to the cigarettes involved." 18 U.S.C. § 2341(2)(C). Both Wamiq, who claims to have been an agent of a licensed distributor in Illinois, and Khan, who was a licensed distributor in Illinois, sought to invoke this exception. But neither Wamiq nor Khan complied with the accounting and payment requirements required under the Illinois Cigarette Tax Act with respect to the cigarettes purchased at the Milwaukee warehouse. As discussed *infra*, neither received invoices for cigarettes purchased from the Milwaukee warehouse, nor did they make their out-of-state purchases from an approved cigarette distributor, maker, manufacturer, or fabricator. The Illinois Cigarette Tax Act required them to do both. There is no reason to allow Wamiq or Khan to seek refuge under 18 U.S.C. § 2341(2)(C) when neither did what Illinois law requires of one licensed or otherwise authorized to possess unstamped cigarettes.

On appeal, Wamiq and Khan challenge the constitutionality of the CCTA. They claim that the CCTA violates the Tenth Amendment and is void for vagueness. They also claim that each should have been charged with a single count of violating the CCTA. In addition, Wamiq challenges the admission of evidence related to his purchase of unstamped cigarettes in Illinois and the sufficiency of the evidence presented against him.

Wamiq and Khan also claim that the district court erred when determining their respective forfeiture amounts. Wamiq

alone challenges his sentence, which he claims resulted from
an unwarranted loss amount and the district court's failure to
apply a two-level reduction for acceptance of responsibility.
Although unconvincing, the arguments presented by Wamiq
and Khan are not perfunctory and undeveloped. Accordingly,
we address each argument in turn.

## A

The CCTA does not violate the Tenth Amendment because
it is a valid exercise of Congressional authority under the
Commerce Clause that neither interferes with the states' ability
to tax or regulate cigarettes nor compels state action. Wamiq
and Khan mischaracterize the CCTA as an attempt by the
federal government to punish violations of state law. Although
they did not articulate this argument in the district court as
they have here, the record indicates that Wamiq and Khan
questioned whether the CCTA is an appropriate exercise of
Congressional authority. Accordingly, we will address their
Tenth Amendment argument on appeal. We review the
constitutionality of a federal statute *de novo*. *United States v.
Goodwin*, 717 F.3d 511, 516 (7th Cir. 2013), *cert. denied*, 134 S. Ct.
334, 187 L. Ed. 2d 234 (2013).

Congress may regulate three categories of activity under
the Commerce Clause: (1) the use of channels of interstate
commerce; (2) the use of instrumentalities of interstate com-
merce, or persons or things in interstate commerce; and (3)
activities that have a substantial relation to interstate com-
merce. *United States v. Stokes*, 726 F.3d 880, 894 (7th Cir. 2013),
*cert. denied*, 134 S. Ct. 833, 187 L. Ed. 2d 573 (2013) (discussing
*United States v. Lopez*, 514 U.S. 549, 115 S. Ct. 1624, 131 L. Ed. 2d

626 (1995)). The CCTA fits comfortably within the second and third categories. *See, e.g., United States v. Abdullah*, 162 F.3d 897 (6th Cir. 1998) (contraband cigarettes have a substantial effect on interstate commerce). Therefore, the CCTA is a valid exercise of Congressional authority under the Commerce Clause.

Further, the CCTA does not violate the principles of federalism contained in the Tenth Amendment. The CCTA does not interfere with the states' ability to tax or regulate cigarettes. *Cf. N. Ill. Chapter of Associated Builders & Contractors, Inc. v. Lavin*, 431 F.3d 1004, 1006 (7th Cir. 2005) ("The national government lacks the authority to regulate how states behave; it cannot direct them to pass or enforce laws."). Nor does the CCTA compel or commandeer the states to do anything. *See United States v. Kenney*, 91 F.3d 884, 891 (7th Cir. 1996) (proper exercise of authority under the Commerce Clause that does not compel state action does not violate the Tenth Amendment).

And, contrary to Wamiq and Khan's suggestion, the CCTA does not punish violations of state law. Rather, the CCTA reflects "the well-established principle that Congress may regulate conduct even though that conduct already violates state law … ." *See United States v. Wilson*, 73 F.3d 675, 684 (7th Cir. 1995). The CCTA is a federal criminal statute that targets interstate cigarette trafficking. Its existence distinguishes this case from *United States v. Constantine*, 56 S. Ct. 223, 80 L. Ed. 233 (1935), which is the primary authority Wamiq and Khan cite for their argument. The Supreme Court held in *Constantine* that Congress could not impose a $1000 sanction for the violation of a state liquor law. *See id.* at 224; *see also United States v. Butler*, 56 S. Ct. 312, 321, 80 L. Ed. 477 (1936) (discuss-

ing *Constantine*). The authority for the $1000 sanction, which the government unsuccessfully argued was a tax, was the Eighteenth Amendment. *Constantine*, 56 S. Ct. at 227. But the federal government lost the authority to impose the $1000 sanction with the repeal of the Eighteenth Amendment, which allowed the federal government to enforce nation-wide prohibition. *Id.* at 227. In other words, the state law alone was not enough to warrant a federal penalty. That is not the case here, as the CCTA provides an independent federal basis for any penalties imposed for violations of the CCTA.

**B**

The CCTA also does violate the void-for-vagueness doctrine. The void-for-vagueness doctrine ensures that statutes provide fair notice of proscribed conduct and protects against the arbitrary or discriminatory enforcement of statutes. *See F.C.C. v. Fox Television Stations, Inc.*, 132 S. Ct. 2307, 2317, 183 L. Ed. 2d 234 (2012); *see also United States v. Tichenor*, 683 F.3d 358, 363–64 (7th Cir. 2012) ("It is settled that, as a matter of due process, a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by statute, or is so indefinite that it encourages arbitrary and erratic arrests and convictions is void for vagueness.") (quoting *Colautti v. Franklin*, 439 U.S. 379, 390, 99 S. Ct. 675, 58 L. Ed. 2d 596 (1979)). Courts evaluate vagueness challenges in view of the facts of a particular case. *United States v. Jones*, 689 F.3d 696, 702 (7th Cir. 2012), *cert. denied*, 133 S. Ct. 895, 184 L. Ed. 2d 695 (2013). This is an issue we review *de novo*. *United States v. Hausmann*, 345 F.3d 952, 958 (7th Cir. 2003).

Wamiq and Khan's vagueness challenge rests on the

reference to state "accounting and payment requirements" in 18 U.S.C. § 2341(2)(C)(ii). They claim that someone licensed or otherwise authorized under the Illinois Cigarette Tax Act to possess unstamped cigarettes would not know whether they are in violation of the CCTA at any given time. There is no merit to this argument.

In Illinois, stamps affixed to original packages of cigarettes show that the required taxes have been paid on those cigarettes. 35 ILCS 130/2. Only licensed distributors and transporters may possess unstamped original packages of cigarettes. 35 ILCS 130/3. To become a licensed distributor, one must submit an application to the Illinois Department of Revenue. 35 ILCS 130/4. A licensed distributor "who purchases cigarettes for shipment into Illinois from a point outside this State" must obtain "invoices in duplicate covering each such shipment." 35 ILCS 130/12. Licensed distributors must "preserve and keep within Illinois at his licensed address all invoices, bills of lading, sales records, copies of bills of sale … and other pertinent papers and documents relating to the manufacture, purchase, sale or disposition of cigarettes." 35 ILCS 130/11. There is nothing vague about these requirements, as they provide fair notice of the "accounting and payment requirements" Illinois requires of licensed distributors.

Neither Wamiq nor Khan asked for or received invoices for any of the purchases made at the Milwaukee warehouse. Without invoices for their Milwaukee warehouse purchases, neither Wamiq nor Khan could comply with the Illinois accounting and payment requirements for licensed distributors. As a result, neither could qualify for the exception provided in 18 U.S.C. § 2341(2)(C)(ii).

Further, contrary to Wamiq and Khan's claim, a conviction under the Illinois Cigarette Tax Act is not a necessary predicate to a violation of the CCTA. *See United States v. Skoczen*, 405 F.3d 537, 547 (7th Cir. 2005) ("The federal statute does not require the person possessing contraband to be the one in violation of the state law."); *see also*, *e.g.*, *Young v. United States*, 124 F.3d 794, 800 (7th Cir. 1997) ("Many statutes build on predicate offenses whether or not the defendant is or has been convicted of the other crimes."). Rather, the CCTA requires only that the government prove beyond a reasonable doubt that (1) the defendant knowingly shipped, transported, received, possessed, sold, distributed or purchased (2) more than 10,000 cigarettes (3) not bearing Illinois cigarette tax stamps (4) under circumstances in which Illinois law required the cigarettes to bear such stamps, and (5) the defendant is not an excepted person under 18 U.S.C. §§ 2341(2)(A)–(D). *See Mohamed*, No. 13-2368, slip op. at 10 (applying CCTA in context of Indiana's Cigarette Tax Act).

In Illinois, licensed distributors may possess unstamped original packages of cigarettes. 35 ILCS 130/3. They can either apply tax stamps to those unstamped original packages of cigarettes, provided they received those unstamped original packages of cigarettes from another in-state licensed distributor or from an out-of-state permit holder, or ship the unstamped original packages of cigarettes out of state. *Id.* Here, the cigarettes purchased at the Milwaukee warehouse were sold by an undercover ATF agent—an out-of-state source who did not hold a permit under the Illinois Cigarette Tax Act . Yet the evidence established that both Wamiq and Khan intended to sell the cigarettes purchased from the Milwaukee warehouse

in Illinois. Consequently, even if Wamiq and Khan purchased the cigarettes at the Milwaukee warehouse with the intention of stamping them as they claim, they could not have done so lawfully because they purchased the cigarettes from an unapproved, out-of-state source.

## C

The indictment properly charged Wamiq and Khan with a violation of the CCTA for each discrete purchase at the Milwaukee warehouse. Wamiq and Khan both argue that they each should have been charged with one count of violating the CCTA. They claim that they could not have violated the CCTA until they failed to comply with the Illinois Cigarette Tax Act's accounting and payment requirements. In other words, Wamiq and Khan claim that the cigarettes they purchased from the Milwaukee warehouse were not contraband on the dates they purchased them. This argument ignores their respective failures to ask for or receive invoices for their purchases—purchases involving an unapproved, out-of-state source. By failing to adhere to these requirements, the cigarettes Wamiq and Khan purchased from the Milwaukee warehouse were contraband at the time of purchase.

Moreover, we agree with the district court that the CCTA applies to each transaction involving contraband cigarettes. To ascertain whether a particular course of conduct involves one or more distinct offenses under a statute, courts must determine the allowable unit of prosecution under the statute. *United States v. Cureton*, 739 F.3d 1032, 1041 (7th Cir. 2014). A unit of prosecution is "the minimum amount of activity for which criminal liability attaches." *Id.*

The CCTA makes it unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes. 18 U.S.C. § 2342(a). Thus, shipping, transporting, receiving, possessing, selling, distributing, or purchasing contraband cigarettes qualifies as an allowable unit of prosecution under the statute provided there is some meaningful difference in the charged conduct. This means that purchasing contraband cigarettes, transporting those cigarettes to another location, and then selling those cigarettes to someone else within a matter of days would not support three violations of the CCTA because the transport and sale involved the same cigarettes and occurred soon after the purchase. *See Cureton*, 739 F.3d at 1041 ("when 'Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses.' ") (quoting *Bell v. United States*, 349 U.S. 81, 84, 75 S. Ct. 620, 620 (1955)). But that is not what happened here. Wamiq and Khan made multiple purchases of contraband cigarettes over a four-month period; Wamiq from October 2011 to February 2012 and Khan from May 2011 to September 2011. These distinct purchases qualify as separate transactions, each sufficient to support a violation of the CCTA.

## D

The district court did not abuse its discretion by admitting evidence of Wamiq's purchases of unstamped cigarettes from a confidential informant in Lombard, Illinois and from an ATF warehouse in Hickory Hills, Illinois. "While evidence of another 'bad act' is 'not admissible to prove a person's character in order to show that on a particular occasion the person

acted in accordance with the character,' it is admissible to prove motive, opportunity, preparation, plan, knowledge, identity, absence of mistake, lack of accident, or intent." *United States v. Causey*, 748 F.3d 310, 317 (7th Cir. 2014) (citing Fed. R. Evid. 404(b)). We apply a four-part test to determine if evidence of another bad act is admissible: (1) the evidence is directed towards establishing a matter other than the defendant's propensity to commit the crimes charged; (2) the other act is similar and close enough in time to be relevant; (3) the evidence is sufficient to support a jury finding that the defendant committed the other act; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice." *Id.* We review challenges to the district court's evidentiary rulings for an abuse of discretion. *United States v. Howard*, 692 F.3d 697, 703 (7th Cir. 2012).

Here, the district court concluded that evidence of Wamiq's Illinois purchases were directed toward Wamiq's motive and plan to purchase unstamped cigarettes so that he could sell them at a lower cost and thereby undercut his competition. The district court also concluded that Wamiq's Illinois purchases were direct evidence of guilt because they rebutted Wamiq's claims that he purchased sufficient tax stamps to apply to the cigarettes he purchased in Illinois and Wisconsin. After concluding that Wamiq's Illinois activity was similar to and close enough in time to the charged conduct, the district court determined that the evidence related to Wamiq's Illinois activity was sufficient to support a jury finding that Wamiq made the Illinois purchases. After concluding that the danger of unfair prejudice did not substantially outweigh the probative value of the evidence, the district court allowed evidence

related to Wamiq's Illinois purchases.

Wamiq argues that the district court should not have allowed evidence of his Illinois purchases because the evidence was "extraordinarily prejudicial," and confused and misled the jury. We disagree. "Evidence is unfairly prejudicial only to the extent that it will cause the jury to decide the case on improper grounds." *United States v. Richards*, 719 F.3d 746, 762–63 (7th Cir. 2013). Generally, our tolerance for the risk of prejudice created by evidence is directly proportional to the probative value of the evidence. *See United States v. Earls*, 704 F.3d 466, 471 (7th Cir. 2012) (discussing Fed. R. Evid. 403).

Wamiq does not challenge the district court's determination that evidence of the Illinois purchases were directed toward Wamiq's motive and plan, both of which are permitted uses under Fed. R. Evid. 404(b). Given Wamiq's principle defense that he was authorized to purchase unstamped cigarettes provided he account for and pay taxes on those cigarettes, evidence of Wamiq's purchases of unstamped cigarettes from unapproved sources is highly probative of his plan to profit from the sale of contraband cigarettes. As the district court noted, Wamiq's defense placed whether he purchased enough tax stamps to place stamps on all of the cigarettes he purchased at issue.

The risk of unfair prejudice, however, is not as high. Wamiq did not deny that he purchased unstamped cigarettes from the undercover ATF operations in Illinois and Wisconsin. And the charges based on Wamiq's Illinois purchases were dismissed. This supports an inference that Wamiq did not violate the CCTA when he purchased unstamped cigarettes in Illinois as

much as it does a propensity inference, and thereby reduces the risk of unfair prejudice. To avoid the latter inference, the district court issued a proper limiting instruction to the jury explaining that it could only consider Wamiq's Illinois purchases for purposes of motive and plan. *See Richards*, 719 F.3d at 763 ("Properly administered limiting jury instructions cure the danger of unfair prejudice unless the jury could not follow the court's limiting instruction.") (quotation omitted). The district court's limiting instruction made clear that Wamiq was not on trial for the purchases he made in Illinois, thereby further mitigating any possible prejudice or confusion. As a result, the risk of unfair prejudice did not substantially outweigh the probative value of Wamiq's Illinois purchases. Consequently, the district court did not err in allowing evidence of Wamiq's Illinois purchases.

**E**

There was sufficient evidence to support Wamiq's convictions as to counts thirty, thirty-four, thirty-seven, and thirty-eight. "We review challenges to the sufficiency of the evidence deferentially." *United States v. Bey*, 725 F.3d 643, 649 (7th Cir. 2013). We will reverse a conviction due to insufficient evidence only if the record, viewed in the light most favorable to the government, lacks evidence from which a jury could find guilt beyond a reasonable doubt. *United States v. Tucker*, 737 F.3d 1090, 1092 (7th Cir. 2013).

As discussed *supra*, the CCTA requires only that the government prove beyond a reasonable doubt that (1) the defendant knowingly shipped, transported, received, possessed, sold, distributed or purchased (2) more than 10,000

cigarettes (3) not bearing Illinois cigarette tax stamps (4) under circumstances in which Illinois law required the cigarettes to bear such stamps, and (5) the defendant is not an excepted person under 18 U.S.C. §§ 2341(2)(A)–(D). Wamiq does not dispute the sufficiency of the evidence with respect to the first four elements. Nor could he, as the record shows that he purchased 158 cases of cigarettes from the Milwaukee warehouse on October 26, 2011; 135 cases of cigarettes from the Milwaukee warehouse on December 8, 2011; 182 cases of cigarettes from the Milwaukee warehouse on December 21, 2011; and 99 cases of cigarettes from the Milwaukee warehouse on February 14, 2012. The record also shows that Illinois law required all of these cigarettes to bear tax stamps, but none of them did.

Wamiq argues only that the evidence was insufficient to show that he was not an excepted person under 18 U.S.C. § 2341(2)(C). Wamiq claims that he was not responsible for the accounting and payment requirements related to cigarette purchases he made for his employer, Good Deal Wholesale, Inc. According to Wamiq, his employer, as the licensed distributor, should have filed the appropriate forms with the Illinois Department of Revenue. But this argument ignores testimony from Michael Hoff that Wamiq admitted that he was responsible for Good Deal Wholesale and that the listed owner of the company played no part in its operation. Viewed in the light most favorable to the government, a jury could find that Wamiq was responsible for the accounting and payment requirements related to cigarette purchases he made for Good Deal Wholesale. Therefore, there was sufficient evidence to support Wamiq's convictions.

**F**

Wamiq and Khan challenge the district court's forfeiture order as unsupported by the evidence. Specifically, Wamiq and Khan claim that the district court used "grossly insufficient 'estimates' " to calculate the profits Wamiq and Khan derived from the conduct that resulted in their respective convictions. We review the district court's calculation, which is a factual determination, for clear error. *United States v. Ali*, 619 F.3d 713, 720 (7th Cir. 2010).

Neither Wamiq nor Khan challenge the propriety of a forfeiture order in this case. Property that constitutes or is derived from "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7) is subject to forfeiture. 18 U.S.C. § 981(a)(1)(C). Trafficking in contraband cigarettes in violation of 18 U.S.C. § 2342 is one of many offenses that fall within the meaning of "specified unlawful activity." *See* 18 U.S.C. § 1956(c)(7)(A); *see also* 18 U.S.C. § 1961(1).

Instead, Wamiq and Khan claim that the district court failed to account for pricing variables that affect the wholesale cigarette market, such as discounts and promotions offered to licensed distributors. The district court used the difference between what Wamiq and Khan actually paid for the cigarettes at the Milwaukee warehouse, approximately $25 per carton, and what they would have paid had they purchased the cigarettes from the manufacturer, approximately $39 per carton. The district court then multiplied this difference, $14, by the number of cartons of contraband cigarettes Wamiq and Khan purchased at the Milwaukee warehouse. The only evidence presented concerning any manufacturer's discount or

promotions was a $2.10 credit that lowered the price of a carton of Marlboro's to $36.70. But neither Wamiq nor Khan presented any evidence that they would have received this discount, or that otherwise undermined the information received from the manufacturers concerning what they charge licensed dealers. Because Wamiq and Khan offer nothing but speculation to rebut the pricing evidence credited by the district court, we cannot say that the district court's calculations of Wamiq's and Khan's forfeiture amounts were clearly erroneous.

### G

Wamiq challenges the district court's findings as to the loss amount caused by Wamiq's unlawful conduct and Wamiq's acceptance of responsibility. The government must show the loss amount caused by the conduct of conviction and other relevant unlawful conduct by a preponderance of the evidence. *United States v. Orillo*, 733 F.3d 241, 244 (7th Cir. 2013). We review the district court's finding of loss amount for clear error, meaning that the "district court's calculation was not only inaccurate but outside the realm of permissible computations." *Id.* (quoting *United States v. Severson*, 569 F.3d 683, 689 (7th Cir. 2009)).

In determining the loss amount, the district court subtracted the number of tax stamps purchased during the relevant period by the company Wamiq admitted he ran, Good Deal Wholesale, from the total number of cigarettes Good Deal Wholesale purchased during that period. The district court then multiplied the difference, 225,390, by the cost of a tax stamp, 98 cents, to arrive at a loss amount of $220,882.20. This

was a permissible computation, particularly as there was no evidence to suggest that Wamiq or Good Deal Wholesale ever purchased tax stamps to cover the difference. In fact, the district court's computation was lenient in that it credits Wamiq with applying tax stamps to unstamped original packages of cigarettes purchased from an unapproved source even though he could not lawfully do so under 35 ILCS 130/3.

We also review the district court's denial of an adjustment for acceptance of responsibility for clear error. *United States v. Ali*, 619 F.3d 713, 720 (7th Cir. 2010). It is true that a defendant who exercises his or her constitutional right to a trial may, in rare situations, demonstrate acceptance of responsibility. *United States v. DeLeon*, 603 F.3d 397, 407 (7th Cir. 2010) (discussing U.S.S.G. § 3E1.1 cmt. 2). But those "rare situations" do not include situations in which the defendant contests his or her factual guilt. U.S.S.G. § 3E1.1 cmt. 2. Here, Wamiq challenged whether he qualified as a person licensed or otherwise authorized by Illinois to have unstamped cigarettes, which is a factual matter. Therefore, the district court was correct to deny Wamiq acceptance of responsibility under § 3E1.1.

### III

For the foregoing reasons, we AFFIRM Wamiq's convictions, sentence, and forfeiture amount, and AFFIRM Khan's conviction and forfeiture amount.